[No. 9189. Department One. March 25, 1911.]

EDWIN L. GAUTHIER, *Appellant*, v. PETER MORRISON *et al.*,
*Respondents*.[1]

EJECTMENT—TITLE OF PLAINTIFF. In ejectment, the plaintiff must recover on the strength of his own title, and not on the weakness of the defendant's.

PUBLIC LANDS—CLASSIFICATION—HOMESTEADS—RIGHTS OF ENTRY-MAN. The rights of one who goes upon vacant, unsurveyed public land subject to settlement under the homestead laws, with intent to enter the same, depends upon the character of the land; and land erroneously classified by the government as a lake is not subject to homestead entry.

PUBLIC LANDS—SURVEY AND CLASSIFICATION—JURISDICTION OF COURTS—LAND DEPARTMENT—AUTHORITY. Under the Federal statutes the exclusive control of the public lands and surveys and the correction of the same being vested in the land department, the state courts have no jurisdiction of an action to recover possession of alleged lands, erroneously and fraudulently surveyed and classified by the government as a lake, the United States not being a party to the action and no remedy having been sought in the land department.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered May 31, 1910, upon sustaining a demurrer to the complaint, dismissing an action of ejectment. Affirmed.

[1]Reported in 114 Pac. 501.

*Skuse & Morrill* and *F. H. McDermont*, for appellant.

*Voorhees & Canfield*, for respondents.

Mount, J.—The plaintiff brought this action, seeking to have the court adjudge that he is entitled to possession of the land described in the complaint, and that the defendants have no right to possession thereof. The defendants demurred to the complaint, upon the ground that the court had no jurisdiction of the subject-matter, and that the complaint did not state facts sufficient to constitute a cause of action, and upon other grounds. The trial court sustained this demurrer, and the plaintiff electing to stand upon the allegations of his complaint, the action was dismissed. Plaintiff appeals.

The complaint alleged:

"That in the year 1877 the government of the United States caused to be surveyed townships twenty-four (24) and twenty-five (25) north of range forty-five (45) East Willamette Meridian, and the same were surveyed during said year by a surveyor employed for that purpose by the government of the United States under a contract entered into between the United States and said surveyor, and such surveyor in making said survey, among other instructions issued to him by the government of the United States in regard to his duties in making such survey, was instructed as follows: 'You are also to meander in manner aforesaid all lakes and deep ponds of the area of twenty-five acres, and upwards; also navigable bayous; shallow ponds readily to be drained or likely to dry up are not to be meandered'; said instructions being a part of the manual of instructions relating to the public surveys, prepared at the general land office and bearing date February 22, 1875; that notwithstanding such instructions and in violation of his duty and of his contract in making the survey of said townships twenty-four and twenty-five north, of range forty-five (45) E. W. M., the said surveyor failed and neglected to include within the survey of said townships all of the land therein, and failed to survey all of the lands within said townships, but did meander and failed to survey a portion of sections four (4) and five (5) in said township twenty-four and a portion of sections twenty (20), twenty-eight (28), twenty-nine (29), thirty-two (32) and thirty-

three (33) in said township twenty-five, and in such survey wrongfully, erroneously and fraudulently designated the lands in said sections lying and being within the meandered lines as made by such survey, as a lake, and by so doing wrongfully, erroneously and fraudulently designated by means of such survey an area of land within such townships in a contiguous body, containing approximately twelve hundred (1,200) acres and lying and being within said meandered lines as aforesaid, as a lake, and wrongfully, erroneously and fraudulently failed and neglected to survey the same, or any part thereof, and no part thereof has since been surveyed by the government of the United States, and has never been alienated or disposed of by the government of the United States, and all of the said lands within the said meandered lines ever since have been and are now unsurveyed government lands belonging to the government of the United States as a part of its public domain and subject to, and open for, settlement under the homestead laws of the United States; that the said lands lying and being within the meandered lines as made by the survey of said townships and said sections as aforesaid, were not at the time of such survey and not now, and never have been a lake covered by a permanent body of water, and were at the time of such survey, and for a long time prior thereto, partially subject to overflow during the wet seasons of the year, with none or little water thereon during the dry season of the year, the most of it hay meadow, upon which meadow grasses and other kind of grasses suitable for hay grew each season, with some swampy or marshy portions at or near the center, upon the most part of which said swampy or marshy portions cat-tails, tules, bullrushes and other kinds of swamp vegetation grew each season, and all thereof likely to dry up and susceptible of being readily and easily drained, and at the present time, and for several years last past, all of the lands within said meander lines as made by said survey are good agricultural lands susceptible of cultivation and susceptible of being used, occupied and farmed and grown to hay, grain and other crops the same as any other good agricultural land; that on the 30th day of October, 1909, this plaintiff, in good faith as a homestead settler, and for the purpose of thereafter making a homestead entry thereon and acquiring title thereto from the government of the United States under the homestead laws, made settlement upon that part and portion of the lands

lying and being within the meandered lines as made and shown by the survey as hereinbefore set forth, which, when surveyed, would be described as follows, to wit: The northeast quarter of the southwest quarter (N. E. ¼ S. W. ¼); part of the northwest quarter of the southeast quarter (N. W. ¼ S. E. ¼) and the southwest quarter of the southeast quarter (S. W. ¼ S. E.¼) of section thirty-three (33), township twenty-five (25) north, of range forty-five (45) East Willamette Meridian, containing seventy-five (75) acres more or less."

The complaint then alleges that the plaintiff is a qualified entryman under the homestead laws of the United States, and that at the time he settled upon the said land no one resided on any part thereof, but that defendants have heretofore wrongfully occupied and cultivated the said lands, and are now wrongfully attempting to occupy and control the same, and have unlawfully prevented the plaintiff from occupying the lands.

It is apparent that this is a possessory action, and while the complaint alleges a right in the plaintiff, this allegation is but a conclusion. Before the plaintiff may be adjudged to have the right of possession, it must appear that the land sought is subject to the right which the plaintiff demands. He can obtain no right to the land or its possession by reason of the fact that the defendants have no right or are trespassers. As we said in *George v. Columbia & Puget Sound R. Co.*, 38 Wash. 480, 80 Pac. 767:

"Whatever may be the technical law on this subject, it is unimportant here for the reason that, in this kind of an action, the plaintiff, if he prevails at all, must prevail upon the strength of his own title, and not upon the weakness of that of his adversary. The basis of this complaint is a possessory right."

Appellant's right to possession is necessarily based upon the character of the land; that is, if the land is vacant, unsurveyed public land, subject to settlement and possession by the plaintiff under the homestead laws of the United States, then he has shown a right, otherwise, he has none. The complaint recites

that, in the year 1877, the government of the United States caused townships 24 and 25, north, range 45, to be surveyed by a surveyor employed for that purpose; that such surveyor did meander the land in dispute, and wrongfully and fraudulently designated such lands as a lake; that said lands within the meandered lines were·not, and never have been, a lake covered by a permanent body of water, but were swampy or marshy at or near the center, and were susceptible of being readily and easily drained, and are good agricultural land susceptible of being occupied, cultivated, and farmed. It is at once apparent from these allegations that the government, through its land department, has classified these lands as a lake, and therefore the land is not subject to settlement under the homestead laws; and that the object of this action is to have the state courts declare that the government, through fraud of its agent, holds the land as water, when in fact it is land which is unsurveyed. The government is not a party to this action, and of course such judgment, if finally made in this case, would not be binding upon the government. It has been held, since early times, that the exclusive control of the public lands rests in the interior department, and remains there until patent has issued and title has passed from the government; and that there is no jurisdiction in the courts to control either the public lands or the action of the government in connection therewith, until patent has issued and the land ceases to be public lands. Until that time, all questions affecting the status of government land rest exclusively in the government. The question then is, have the state courts jurisdiction to determine questions involving the character or disposition of land by the United States, or the action of the interior department in regard thereto?

Section 453, U. S. Revised Statutes, provides:

"The commissioner of the general land office shall perform, under the direction of the secretary of the interior, all executive duties appertaining to the surveying and sale of the public lands of the United States, or in anywise respecting

such public lands, and, also, such as relate to private claims of land, and the issuing of patents for all grants of land under the authority of the government."

Section 2218, Id., provides:

"The secretary of the interior shall take all the necessary measures for the completion of the surveys in the general surveying-districts for which surveyors-general have been, and may be, appointed."

Section 2219 provides:

"In all cases where, as provided in the preceding section, the field-notes, maps, records, and other papers appertaining to land-titles in any state are turned over to the authorities of such state, the same authority, powers, and duties in relation to the survey, resurvey, or subdivision of lands therein, and all matters and things connected therewith, as previously exercised by the surveyor-general, whose district included such state, shall be vested in, and devolve upon, the commissioner of the general land-office."

And section 2395 provides:

"(7) Every surveyor shall note in his field-book the true situations of all mines, salt licks, salt springs, and mill-seats which come to his knowledge; all water-courses over which the line he runs may pass; and also the quality of the lands."

The act of Congress of March 31, 1909 (Supp. to Fed. Stats. Ann. 563), provides:

"That the secretary of the interior may, in his discretion, cause to be made as he may deem wise under the rectangular system now provided by law, such resurveys or retracements of the surveys of public lands as, after full investigation, he may deem essential to properly mark the boundaries of the public lands remaining undisposed of: *Provided,* That no such resurvey or retracement shall be so executed as to impair the *bona fide* rights or claims of any claimant, entryman, or owner of lands affected by such resurvey or retracement: *Provided, further,* That not to exceed five per cent of the total annual appropriation for surveys and resurveys of the public lands shall be used for the resurveys and retracements authorized hereby."

It is not difficult, upon the foregoing legislation, to reach the conclusion that the courts of a state cannot undo what the secretary of the interior has done in the course of his administration of the public lands, or decree rights of private parties in the land which rest upon the necessity of the secretary of the interior undoing whatever he has already done and doing something different. In *Cragin v. Powell,* 128 U. S. 691, the supreme court of the United States said:

"That the power to make and correct surveys of the public lands belongs to the political department of the government and that, whilst the lands are subject to the supervision of the general land office, the decisions of that bureau in all such cases, like that of other special tribunals upon matters within their exclusive jurisdiction, are unassailable by the courts, except by a direct proceeding; and that the latter have no concurrent or original power to make similar corrections, if not an elementary principle of our land law is settled by such a mass of decisions of this court that its mere statement is sufficient."

A large number of decisions are therein cited to support this statement, and the court then proceeds:

"The reason of this rule, as stated by Justice Catron in the case of *Haydel v. Dufresne,* is that great confusion and litigation would ensue if the judicial tribunals, State and Federal, were permitted to interfere and overthrow the public surveys on no other ground than an opinion that they could have the work in the field better done and divisions more equitably made than the department of public lands could do."

This declaration of lack of jurisdiction in the courts prior to the issuance of patent has been many times affirmed by the supreme court of the United States: *Stoneroad v. Stoneroad,* 158 U. S. 240; *Russell v. Maxwell Land Grant Co.,* 158 U. S. 253; *Knight v. United States Land Association,* 142 U. S. 161; *Kirwan v. Murphy,* 189 U. S. 35.

In *Kirwan v. Murphy, supra,* the court said:

"The land department must necessarily consider and determine what are public lands, what lands have been surveyed, what are to be surveyed, what have been disposed of, what re-

main to be disposed of, and what are reserved.   The department has held that the land lying between the alleged meander line and the lake, some 1,200 acres, is government land, and has ordered it to be surveyed. *In re Burns*, 20 L. Dec. 28, 295, 23 L. Dec. 430.   The execution of that order was restrained by the preliminary injunction herein, and that has been made perpetual by the decree.   We are confronted on the threshold with two objections to the maintenance of this bill; namely, the want of jurisdiction in equity, and the want of jurisdiction thus to interfere with executive administration. . . . The administration of the public lands is vested in the land department, and its power in that regard cannot be 'divested by the fraudulent action of a subordinate officer, outside of his authority, and in violation of the statute. *Whiteside v. United States*, 93 U. S. 247; *Moffat v. United States*, 112 U. S. 24; *Hume v. United States*, 132 U. S. 406, 414.   The courts can neither correct nor make surveys.   The power to do so is reposed in the political department of the government, and the land department, charged with the duty of surveying the public domain, must primarily determine what are public lands subject to survey and disposal under the public lands laws.   Possessed of the power, in general, its exercise of jurisdiction cannot be questioned by the courts before it has taken final action.   *Brown v. Hitchcock*, 173 U. S. 473."

In *Michigan Land & Lumber Co. v. Rust*, 168 U. S. 589, the supreme court said:

"Generally speaking, while the legal title remains in the United States, the grant is in process of administration and the land is subject to the jurisdiction of the land department of the government.   It is true a patent is not always necessary for the transfer of the legal title.   Sometimes an act of congress will pass the fee. . . . Sometimes a certification of a list of lands to the grantee is declared to be operative to transfer such title, . . . but wherever the granting act specifically provides for the issue of a patent, then the rule is that the legal title remains in the government until the issue of the patent . . . .; and while so remaining the grant is in process of administration, and the jurisdiction of the land department is not lost . . . And, again, on page 181 is this

language: 'The secretary is the guardian of the people of the United States over the public lands. The obligations of his oath of office oblige him to see that law is carried out, and that none of the public domain is wasted or is disposed of to a party not entitled to it. He represents the government, which is a party in interest in every case involving the surveying and disposal of the public lands.' . . . This jurisdiction extends to the ordering of new surveys whenever in the judgment of the department there has been error or fraud in those already made. *Cragin v. Powell,* 128 U. S. 691. In *Tubbs v. Wilhoit,* 138 U. S. 134, 143, the court quoted with approval this passage from a letter of the secretary of the interior: 'There can be no doubt but that under the act of° July 4, 1836, reorganizing the general land office, the commissioner has general supervision over all surveys, and that authority is exercised whenever error or fraud is alleged on the part of the surveyor general.' And in *New Orleans v. Paine,* 147 U. S. 261, the question was presented as to the power of the department to order a new survey, and on page 206 the rule was thus stated: 'If the department was not satisfied with this survey, there was no rule of law standing in the way of its ordering another. Until the matter is closed by final action, the proceedings of an officer of a department are as much open to review or reversal by himself, or his successor, as are the interlocutory decrees of a court open to review upon the final hearing.' So, notwithstanding that a survey had been made and that such survey indicated that the land in controversy was swamp land, and, therefore, passing under the act of 1850 to the state of Michigan, it was within the power of the land department, at any time prior to the issue of a patent, of its own motion, to order a resurvey and correct by that any mistakes in the prior survey."

In *Brown v Hitchcock,* 173 U. S. 473, the supreme court of the United States said:

"In this case the record disclosed no patent, and therefore no passing of the legal title. Whatever equitable rights or title may have vested in the state, the legal title remained in the United States. Until the legal title to public lands passes from the government, inquiry as to all equitable rights comes within the cognizance of the land department. In

*United States v. Schurz*, 102 U. S. 378, 396, which was an application for a mandamus to compel delivery of a patent, it was said: 'Congress has also enacted a system of laws by which rights to these lands may be acquired, and the title of the government conveyed to the citizen. This court has, with a strong hand, upheld the doctrine that so long as the legal title to these lands remained in the United States, and the proceedings for acquiring it were as yet *in fieri*, the courts would not interfere to control the exercise of the power thus vested in that tribunal. To that doctrine we still adhere.' . . . The dissent announced by the chief justice only emphasizes the proposition laid down in the opinion as heretofore quoted, that so long as the legal title remains in the government, all questions of right should be solved by appeal to the department and not to the courts."

In *Oregon v. Hitchcock*, 202 U. S. 60, the same court said:

"Again, it must be noticed that the legal title to all these tracts of land is still in the government. No patents or conveyances of any kind have been executed. There has been no finding or adjudication by the land department that the lands referred to were swamp or overflowed on March 12, 1860. Under those circumstances it is not a province of the courts to interfere with the land department in its administration. So far as a grant of swamp lands is claimed, it must be held that the grant is in process of administration, and, until the legal title passes from the government, inquiry as to equitable rights comes within the cognizance of the land department. Courts may not anticipate its action, or take upon themselves the administration of the land grants of the United States."

The same rule has been followed by this court in *Columbia Canal Co. v. Benham*, 47 Wash. 249, 91 Pac. 961, 125 Am. St. 901.

We are clear, therefore, that the state courts have no jurisdiction of this case under the facts alleged, and that the remedy of the appellant, if he has any, is in the land department of the United States government. The complaint showing that the land is held as water by the government, it is not subject to homestead entry. The complaint is therefore insuf-

ficient to show a right of possession in the plaintiff, and the
judgment must be affirmed.

DUNBAR, C. J., PARKER, FULLERTON, and GOSE, JJ., con-
cur.