## JOHN T. BRIGNALL v. DAVID HANNAH, William Turnbull, et al.

(157 N. W. 1042.)

Meandered lake — bed of — land constitutes — evidence — government survey — surveyors — shore lines — established by — no fraud or mistake.

1. Evidence examined, it is *held* that the land in controversy constitutes the bed of a meandered lake, and was covered with water at the time of the government survey of the surrounding lands, and that in making said survey the United States government surveyors intentionally and deliberately, and without fraud or mistake, established the shore lines by meander lines, and intentionally separated and set apart, as a lake, the land permanently covered by water from the land abutting thereon.

Areas — meandered lake — so designated by surveyor — errors — mistakes — facts — questions for courts.

2. The question whether certain areas designated and meandered by a government surveyor as a lake were in fact dry, agricultural lands, erroneously or fraudulently omitted from the survey, is one properly determinable by the courts.

Meander lines — purpose of — general rule — non-navigable lakes — ponds
— not boundary lines.

3. As a general rule the meander lines run along the margin of non-navigable
lakes or ponds, are not intended as boundary lines, but are run for the purpose
of determining the quantity of land for which the purchaser must pay.

Patentee from United States — title — adjoining submerged lands — law of
state — where located — governs.

4. Whether the patentee of the United States to land bounded on a non-
navigable lake belonging to the United States takes title to the adjoining
submerged land is determined by the law of the state where the land lies.

Riparian rights — owners — non-navigable lakes or ponds — common-law
rules — governed by — in this state.

5. The rights of riparian owners with respect to non-navigable lakes and
ponds in North Dakota rest upon and are controlled by the rules of the common
law.

Common law — meandered lake or pond — owners of abutting lands —
take title in severalty — to center-point.

6. Under the common law the owners of land abutting upon a meandered,
non-navigable lake own the lake bed in severalty, their respective titles extend-
ing to the center of the lake.

Opinion filed May 1, 1916.

From a judgment of the District Court of Cavalier County, *Cooley,*
Special Judge, defendants, William Turnbull, Levi Bell, George Bell,
and Samuel Connor, appeal.

Affirmed.

*Joseph Cleary* and *Grimson & Johnson,* for appellants.

The existence of a lake or fast dry land is a political question to be
decided by the land department. Chapman & D. Land Co. v. Bigelow,
77 Ark. 338, 92 S. W. 534; Re California & O. Land Co. 21 Land Dec.
344; Re Goose Lake, 7 Land Dec. 527.

These meandered lines form the boundary lines of the fractional
section, and will not be considered as merely indicating the quantity of
upland to be paid for, where the patents conveyed only the land sur-
veyed and make the meander lines the boundary. Re Hemphill, 27
Land Dec. 119; Re McClennen, 29 Land Dec. 514; Horne v. Smith, 159
U. S. 40, 40 L. ed. 68, 15 Sup. Ct. Rep. 988; Lammers v. Nissen, 4
Neb. 245; Bissell v. Fletcher, 19 Neb. 725, 28 N. W. 303; Niles v.
Cedar Point Club, 29 C. C. A. 5, 54 U. S. App. 668, 85 Fed. 45.

The government may subsequently survey such lands and grant them to another person. Smith v. Miller, 105 Iowa, 688, 70 N. W. 123, 75 N. W. 499; Niles v. Cedar Point Club, 175 U. S. 300, 44 L. ed. 171, 20 Sup. Ct. Rep. 124; Security Land & Exploration Co. v. Burns, 193 U. S. 167, 48 L. ed. 662, 24 Sup. Ct. Rep. 425; French-Glen Live Stock Co. v. Springer, 185 U. S. 47, 46 L. ed. 800, 22 Sup. Ct. Rep. 563; Horne v. Smith, 159 U. S. 40–45, 40 L. ed. 68–70, 15 Sup. Ct. Rep. 988.

The lands occupied by these appellants were omitted islands,—were dry at the time of the survey and are not the result of accretions. They remained the property of the government and subject to disposal under its laws. Scott v. Lattig, 227 U. S. 229, 57 L. ed. 490, 44 L.R.A. (N.S.) 107, 33 Sup. Ct. Rep. 242; United States v. Mission Rock, 189 U. S. 391, 47 L. ed. 865, 23 Sup. Ct. Rep. 606; Kirwan v. Murphy, 189 U. S. 53, 47 L. ed. 704, 23 Sup. Ct. Rep. 599.

The prevailing parties in the court below claim title to a large tract of land, and this in addition to their regular homesteads of 160 acres each. This is contrary to law. U. S. Rev. Stat. §§ 2259, 2298, 2465, 2476, Comp. Stat. 1913, §§ 4557, 4918; United States v. Mission Rock, supra; Whitney v. Detroit Lumber Co. 78 Wis. 240, 47 N. W. 425; Stoner v. Rice, 121 Ind. 51, 6 L.R.A. 389, 22 N. E. 968.

*W. A. McIntyre* and *Watson & Young* and *Horace C. Young,* for respondent.

"The meander lines run along or near the margin of such waters are run for the purpose of ascertaining the exact quantity of the upland to be charged for, and not for the purpose of limiting the title of the grantee to such meander lines. They are not boundary lines." Hardin v. Jordan, 140 U. S. 371, 35 L. ed. 428, 11 Sup. Ct. Rep. 808, 838; St. Paul & P. R. Co. v. Schurmeier, 7 Wall. 272, 19 L. ed. 74; Kirwan v. Murphy, 28 C. C. A. 348, 49 U. S. App. 658, 83 Fed. 278; Sizor v. Logansport, 151 Ind. 628, 44 L.R.A. 815, 50 N. E. 377; Schlosser v. Cruickshank, 96 Iowa, 418, 65 N. W. 345; Lamprey v. State, 52 Minn. 192, 18 L.R.A. 670, 38 Am. St. Rep. 541, 53 N. W. 1140; Mendota Club v. Anderson, 101 Wis. 490, 78 N. W. 189; Poynter v. Chipman, 8 Utah, 448, 32 Pac. 691; Mitchell v. Smale, 140 U. S. 407, 35 L. ed. 443, 11 Sup. Ct. Rep. 819, 840; Ex parte Davidson, 57 Fed. 885; Coburn v. San Mateo County, 75 Fed. 530; Barringer v. Davis, 141

Iowa, 419, 120 N. W. 65.; Niles v. Cedar Point Club, 29 C. C. A. 5, 54 U. S. App. 668, 85 Fed. 45, affirmed in 175 U. S. 300, 44 L. ed. 171, 20 Sup. Ct. Rep. 124; Horne v. Smith, 159 U. S. 40–43, 40 L. ed. 68–70, 15 Sup. Ct. Rep. 988; Bernot v. Morrison, 81 Wash. 538, 143 Pac. 104; Sherwin v. Bitzer, 97 Minn. 252, 106 N. W. 1046; Knudsen v. Omanson, 10 Utah, 124, 37 Pac. 250; Hanson v. Rice, 88 Minn. 273, 92 N. W. 982; Cawlfield v. Smyth, 69 Or. 41, 138 Pac. 227; Everson v. Waseca, 44 Minn. 247, 46 N. W. 405; Brown v. Dunn, 135 Wis. 374, 115 N. W. 1097; Johnson v. Brown, 33 Wash. 588, 74 Pac. 677; Tucker v. Mortenson, 126 Minn. 214, 148 N. W. 60; Pere Marquette Boom Co. v. Adams, 44 Mich. 403, 6 N. W. 857.

The fact that the deed or patent contains a statement of the quantity of land conveyed is not controlling. Sherwin v. Bitzer, 97 Minn. 252, 106 N. W. 1046; Hanson v. Rice, 88 Minn. 273, 92 N. W. 982; Everson v. Waseca, 44 Minn. 247, 46 N. W. 405; Tucker v. Mortenson, 126 Minn. 214, 148 N. W. 60; Heald v. Yumisko, 7 N. D. 427, 75 N. W. 808; Olson v. Huntamer, 6 S. D. 372, 61 N. W. 481.

The presumption is that a grant of land thus bounded is intended to include the contiguous land covered by water,—that is, to point in the center, or equidistant from the land on either side. Mitchell v. Smale, 140 U. S. 406, 35 L. ed. 442, 11 Sup. Ct. Rep. 819, 840; St. Paul & P. R. Co. v. Schurmeier, 7 Wall. 272, 19 L. ed. 74; Gouverneur v. National Ice Co. 134 N. Y. 355, 18 L.R.A. 695, 30 Am. St. Rep. 669, 31 N. E. 865; Lamprey v. State, 52 Minn. 181, 18 L.R.A. 670, 38 Am. St. Rep. 541, 53 N. W. 1139; Fuller v. Dauphin, 124 Ill. 542, 7 Am. St. Rep. 388, 16 N. E. 817; Ledyard v. Ten Eyck, 36 Barb. 102; Ridgway v. Ludlow, 58 Ind. 248; Warren v. Chambers, 25 Ark. 120, 4 Am. Rep. 23, 91 Am. Dec. 538; Cook v. McClure, 58 N. Y. 437, 17 Am. Rep. 270; Rev. Codes 1905, §§ 4752, 4930, Comp. Laws 1913, §§ 5295, 5473; Flisrand v. Madson, 35 S. D. 457, 152 N. W. 796.

The riparian shore owners of such non-navigable or non-public ponds or lakes have absolute ownership of the entire bed and shore of such lakes and ponds. Olson v. Huntamer, 6 S. D. 364, 61 N. W. 479; Shell v. Matteson, 81 Minn. 38, 83 N. W. 491; Carr v. Moore, 119 Iowa, 152, 97 Am. St. Rep. 292, 93 N. W. 52; Hardin v. Jordan, 140 U. S. 371, 35 L. ed. 428, 11 Sup. Ct. Rep. 808, 838; Ledyard v. Ten Eyck, 26 Barb. 102; Smith v. Rochester, 92 N. Y. 463, 44 Am. Rep.

393; Cobb v. Davenport, 32 N. J. L. 369, 33 N. J. L. 223, 97 Am. Dec. 718; Lembeck v. Nye, 47 Ohio St. 336, 8 L.R.A. 578, 21 Am. St. Rep. 828, 24 N. E. 686; Clute v. Fisher, 65 Mich. 48, 31 N. W. 614; Ridgway v. Ludlow, 58 Ind. 252; Mitchell v. Smale, 140 U. S. 406, 35 L. ed. 442, 11 Sup. Ct. Rep. 819, 840; Gouverneur v. National Ice Co. 134 N. Y. 355, 18 L.R.A. 695, 30 Am. St. Rep. 669, 31 N. E. 865; Smith v. Rochester, 92 N. Y. 463, 44 Am. Rep. 393; Rice v. Ruddiman, 10 Mich. 125; Clute v. Fisher, 65 Mich. 48, 31 N. E. 614; Indiana v. Milk, 11 Biss. 197, 11 Fed. 389; Luce v. Carley, 24 Wend. 451, 35 Am. Dec. 637; Ex parte Jennings, 6 Cow. 518, 16 Am. Dec. 447; Mott v. Mott, 68 N. Y. 247; Rhodes v. Cissel, 82 Ark. 367, 101 S. W. 758; Scheifert v. Briegel, 90 Minn. 125, 65 L.R.A. 296, 101 Am. St. Rep. 399, 96 N. W. 44; Grand Rapids Ice & Coal Co. v. South Grand Rapids Ice & Coal Co. 102 Mich. 227, 25 L.R.A. 815, 47 Am. St. Rep. 516, 60 N. W. 681; 3 Farnham, Waters, § 843, and cases cited; Little v. Williams, 88 Ark. 37, 113 S. W. 340; Johnson v. Elder, 92 Ark. 30, 121 S. W. 1066; Stoner v. Rice, 121 Ind. 51, 6 L.R.A. 389, 22 N. E. 968; Kean v. Calumet Canal & Improv. Co. 190 U. S. 452, 47 L. ed. 1134, 23 Sup. Ct. Rep. 651; Lamprey v. State, 52 Minn. 181, 18 L.R.A. 670, 38 Am. St. Rep. 541, 53 N. W. 1139.

"Unless the contrary appears, a grant of land bounded by a water course conveys riparian rights, and the title of the riparian owner extends to the middle line of the lake or stream of the inland waters." Grand Rapids Ice & Coal Co. v. South Grand Rapids Ice & Coal Co. 102 Mich. 227, 25 L.R.A. 815, 47 Am. St. Rep. 516, 60 N. W. 681; 40 Cyc. 636, 637; Knudsen v. Omanson, 10 Utah, 124, 37 Pac. 250; Tucker v. Mortensen, 126 Minn. 214, 148 N. W. 60; Bernot v. Morrison, 81 Wash. 538, 143 Pac. 104; Lembeck v. Nye, 47 Ohio St. 336, 8 L.R.A. 578, 21 Am. St. Rep. 828, 24 N. E. 686; Smith v. Robertson, 92 N. Y. 463, 44 Am. Rep. 393; Conneaut Ice Co. v. Quigley, 225 Pa. 605, 74 Atl. 648; Poynter v. Chipman, 8 Utah, 448, 32 Pac. 692; Bristow v. Cormican, L. R. 3 App. Cas. 641; Harrison v. Fite, 78 C. C. A. 447, 148 Fed. 781; Carr v. Moore, 119 Iowa, 152, 97 Am. St. Rep. 292, 93 N. W. 52; Grand Rapids & I. R. Co. v. Butler, 159 U. S. 87, 40 L. ed. 85, 15 Sup. Ct. Rep. 991; Gouverneur v. National Ice Co. 134 N. Y. 355, 18 L.R.A. 695, 30 Am. St. Rep. 669, 31 N. E. 865; Flisrand v. Madson, 35 S. D. 457, 152 N. W. 796; Scheifert v. Briegel, 90 Minn.

125, 65 L.R.A. 296, 101 Am. St. Rep. 399, 96 N. W. 44; Hanson v. Rice, 88 Minn. 273, 92 N. W. 982; Sherwin v. Bitzer, 97 Minn. 252, 106 N. W. 1046; Hinckley v. Peay, 22 Utah, 21, 60 Pac. 1012; Stoner v. Rice, 121 Ind. 51, 6 L.R.A. 389, 22 N. E. 968; Boorman v. Sunnuchs, 42 Wis. 233; Fuller v. Shedd, 161 Ill. 462, 33 L.R.A. 146, 52 Am. St. Rep. 380, 44 N. E. 286; Heald v. Yumisko, 7 N. D. 422, 75 N. W. 807; Bigelow v. Draper, 6 N. D. 152, 69 N. W. 570; Gould, Waters, § 4; Angell, Watercourses, §§ 1–4; Green Bay & M. Canal Co. v. Kaukauna Water Power Co. 90 Wis. 370, 28 L.R.A. 443, 48 Am. St. Rep. 937, 61 N. W. 1121, 63 N. W. 1019, and cases cited; Rev. Codes 1905, §§ 4707, 4798, Comp. Laws 1913, §§ 5250, 5341.

Lands so meandered are never reserved to the government to be afterwards granted out to other persons, to the injury of the original grantees. Their title is not limited by such lines run along or near the margin of such waters. Mitchell v. Smale, 140 U. S. 406, 35 L. ed. 442, 11 Sup. Ct. Rep. 819, 840; Bates v. Illinois C. R. Co. 1 Black, 204, 17 L. ed. 158; Lindsey v. Hawes, 2 Black, 554, 17 L. ed. 265; St. Paul & P. R. Co. v. Schumeir, 7 Wall. 272, 19 L. ed. 74; St. Paul, S. & T. F. R. Co. v. First Div. St. Paul & P. R. Co. 26 Minn. 31, 49 N. W. 303; Knudsen v. Omanson, 10 Utah, 124, 37 Pac. 250; Hinckley v. Peay, 22 Utah, 21, 60 Pac. 1012; French-Glenn Live Stock Co. v. Springer, 185 U. S. 47, 46 L. ed. 800, 22 Sup. Ct. Rep. 563.

CHRISTIANSON, J. This is an action to quiet title to certain lands in Cavalier county which constituted a portion of the bed of a non-navigable body of water known as Rush lake. The land contiguous to Rush lake was surveyed by the United States government in 1884 and 1885, at which time the lake was meandered. The evidence clearly shows that the meander line around the lake followed closely to the water's edge as it existed at the time of the survey. It appears that when the original survey was made there was a small island in the lake, which throughout the litigation was designated as Gordon's island. This island was omitted when the original survey was made, but in 1903 it was meandered by the government as omitted land; that is, as upland which had been omitted when the original survey was made. This island contains 64.04 acres, and is occupied by the defendant Hilton R. Brignall under a homestead entry. The waters in the lake gradually

receded, and as a result thereof a large part of the lake bed became. dry land. Plaintiff is the owner of certain lands contiguous to, and abutting upon, the meander line, and claims that his land abutting upon said lake extends to the center of the lake, and that the entire lake bed within the meander line, with the exception of Gordon's island, belongs to the abutting or riparian owners. All the abutting owners were made parties defendant, and interposed answers and counterclaims in conformity with the theory adopted by the plaintiff, and asserted their riparian ownership to proportionate portions of the lake bed. Certain persons had entered into possession of portions of the lake bed, and these were also made defendants, and in their answers they assert that they are qualified entrymen under the homestead laws of the United States of America; that the title of the land occupied by them is in the United States government and part of the public domain, and hence subject to entry under the land laws of the United States, and that the persons so occupying said premises are entitled to possess the same as squatters.

Upon the trial all conflict among the different abutting owners, and between such owners and Hilton R. Brignall, the occupant of Gordon's island, was eliminated, and the controversy in the court below and on this appeal is solely between the abutting owners, who claim title to the lake bed as riparian owners and the persons claiming a right to occupy the premises as squatters. The trial court made findings of fact in favor of the abutting owners, and ordered judgment "that the title to said lake bed was originally in the United States government, and passed from it by conveyance to the several abutting owners as grantees or successors in interest to the grantees of the United States as an incident to the grants of abutting lands by it, and that said plaintiff and said defendants (abutting owners) are the owners of said lake bed, and all of it, but not including the tract contained therein, which has been surveyed, meandered, and is known in the records of this case as Gordon's island." The so-called "squatters" have appealed, and demanded a trial *de novo* in this court.

(1) Appellants' first contention is that the land within the meandered lines of survey was never a lake in the proper sense of the word, such as to give occasion for application of the doctrines applicable to riparian ownership. Funk & Wagnall's New Standard Dictionary

defines a lake as an inland body of water or natural inclosed basin serving to drain the surrounding country. According to Webster's International Dictionary a lake is a considerable body of standing water in a depression of land; and when a body of standing water is so shallow that aquatic plants grow in most of it, it is usually called a *pond*; when the pond is mostly filled with vegetation it becomes a *marsh*.

Among the witnesses who testified upon the trial were two of the men who assisted in making the survey for the government, and a careful examination of all the evidence leads us to the conclusion that the tract meandered was in fact a lake not only at the time of the survey, but continued to be so for some time subsequent thereto, and that the land involved in this controversy became dry land by reason of the gradual recession of the waters in the lake.

(2) Appellants' second contention is that the land occupied by the appellants as squatters was high, dry land at the time of the survey, and omitted therefrom by mistake or neglect on the part of the surveyors. There was some evidence offered by the appellants tending to sustain this contention. Upon this question the trial court, among other things, found "that the various tracts of land hereinbefore described and bordering on the meander line of what has heretofore been known as Rush Lake were settled and filed upon by the various parties to whom patent was issued subsequent to the survey and meander of said Rush Lake as shown by the government surveys, and that the various tracts conveyed to the state of North Dakota were conveyed subsequent to the surveying and meandering of said Rush Lake by the United States government; that the real estate bordering on what is known as Rush Lake was surveyed under the direction of the United States government many years prior to the entries, sales, and transfers from the United States hereinbefore referred to, and plats and maps of said government surveys were duly returned and filed and approved by the proper authorities; that in making said surveys for the United States government its surveyors intentionally and deliberately, and without mistake or fraud, established the shore lines by meander lines, and intentionally separated and set apart the waste land contained in the lake bed of said Rush Lake from the upland or grazing land, which was deemed fit and suitable for agricultural purposes and for sale. . . . That at the time of the original survey and meandering, the adjacent

country was entirely unsettled and was for a number of years thereafter; that said adjacent lands have been settled from year to year and brought under cultivation until they are practically all under cultivation now; that as a result of such cultivation and settlement and the breaking up of such lands and the introduction of drainage, the waters have gradually receded until within the last few years, and at the present time, a very large part of said lake bed is now out of water and a considerable part thereof is, and has been, fit for agricultural purposes and the growing of grain, and other portions of the same have become adapted for grazing and the cutting of hay, and only a comparatively small part thereof, and that in the southern part, is at the present time continuously under water." We are satisfied that this finding is supported by a preponderance of the evidence.

(3) It is next asserted that the lands occupied by these appellants are not the result of accretion or reliction, but were dry lands at the time of the survey, and omitted therefrom through the mistake or fraud of the surveyors. The trial court decided this proposition adversely to appellants, and found that all of the land in controversy was under water at the time of the survey, and that the surveyors intentionally and deliberately, and without mistake or fraud, established the shore lines by meander lines. And an examination of the evidence in this case leads us to the conclusion that the trial court's finding is correct.

(4) Appellants next contend that the question of whether the land in controversy was in fact a lake or dry land omitted from the survey is a political question to be determined by the commissioner of the General Land Office and the Secretary of the Interior, and cannot be determined by the courts. Appellants' contention is untenable. Plaintiff does not ask this court to interfere with the Land Department in the administration of the land, nor does he seek the determination of an issue within its jurisdiction. The sole question in this case is one of title to real property. Obviously this is a legal question, and properly determinable by the courts. This has been so repeatedly and uniformly recognized by the courts of this country that citation of authority is unnecessary.

The argument of appellants' counsel is based upon the same basic reasoning applied by the supreme court of Washington in Gauthier v. Morrison, 62 Wash. 572, 114 Pac. 501, wherein the court held "that

the exclusive control of public lands vests in the Interior Department until patent is issued, and, where plaintiff alleged that through fraud or mistake of a government surveyor certain agricultural lands which were subject to homestead entry were designated as a lake; that plaintiff had settled thereon in good faith as a homestead settler; and that defendant had wrongfully occupied the land,—the state court had no jurisdiction to grant relief and adjudge plaintiff entitled to possession."

The decision of the Washington court was overruled by the United States Supreme Court in Gauthier v. Morrison, 232 U. S. 452, 58 L. ed. 680, 34 Sup. Ct. Rep. 384. In its decision the Federal Supreme Court said: "It is true that the authority to make surveys of the public lands is confided to the Land Department, and that the courts possess no power to revise or disturb its action in that regard; but here the court was not asked to make a survey or to revise or disturb one already made. As has been indicated, the land in question was not surveyed, but left unsurveyed. . . .

"Generally speaking, it also is true that it is not a province of the courts to interfere with the Land Department in the administration of the public land laws, and that they are to be deemed in process of administration until the proceedings for the acquisition of the title terminate in the issuing of a patent. But no interference with that Department or usurpation of its functions was here sought or involved. It has not been invested with authority to redress or restrain trespasses upon possessory rights, or to restore the possession to lawful claimants when wrongfully dispossessed. Congress has not prescribed the forum and mode in which such wrongs may be restrained and redressed, as doubtless it could, but has pursued the policy of permitting them to be dealt with in the local tribunals according to local modes of procedure. And the exercise of this jurisdiction has been not only sanctioned by the appellate courts in many of the public-land states, but also recognized and approved by this court."

It may also be noted that in the case at bar the respondents do not assail any act or determination of the Land Department. On the contrary, they base their rights upon the proposition that the government surveyors, so far as the land in controversy is concerned, made a correct survey. Nor has the Land Department ever questioned the correctness of the survey, or sought to bring the lands in controversy under the

dominion of the Land Department as part of the public domain, but the Land Department has rather recognized the fact that such lands were not omitted from the original survey. If appellants' contention is correct, then in 1903, at the time of the survey of Gordon's island, not only Gordon's island, but all of the lands involved in this controversy, constituted dry land omitted from the original survey. Hence, it would be rather an anomalous proceeding to survey and meander the irregular tract known as Gordon's island, if as a matter of fact the tract so surveyed and meandered in reality was located in the interior of a larger unsurveyed tract.

(5) Appellants next contend that the United States government never parted with the title to the land in controversy, and consequently that the same constitutes part of the public domain. The question of the rights of riparian owners under patents or grants from the United States has frequently been considered by the Supreme Court of the United States. A review of the various decisions upon this question would serve no useful purpose, still, as said by Mr. Justice McReynolds (Producers' Oil Co. v. Hanzen, 238 U. S. 325, 59 L. ed. 1330, 35 Sup. Ct. Rep. 755), these decisions "unquestionably support the familiar rule . . . that, in general, meanders are not to be treated as boundaries." See Hardin v. Jordan, 140 U. S. 371, 372, 35 L. ed. 428, 430, 11 Sup. Ct. Rep. 808, 838; Mitchell v. Smale, 140 U. S. 406, 35 L. ed. 442, 11 Sup. Ct. Rep. 819, 840; Kean v. Calumet Canal & Improv. Co. 190 U. S. 452, 47 L. ed. 1134, 23 Sup. Ct. Rep. 651.

They also establish the principle that the question "whether the patentee of the United States to land bounded on a non-navigable lake belonging to the United States takes title to the adjoining submerged land is determined by the law of the state where the land lies." Hardin v. Shedd, 190 U. S. 508, 519, 47 L. ed. 1156, 1157, 23 Sup. Ct. Rep. 685; Whitaker v. McBride, 197 U. S. 510, 512, 49 L. ed. 857, 860, 25 Sup. Ct. Rep. 530.

"The rules of law, as established by the numerous decisions of the Supreme Court on that subject," said Trieber, District Judge (United States v. Wilson, 214 Fed. 630, 638), "may be epitomized as follows: If there were no mistakes made in the survey, and a permanent body of non-navigable water was properly meandered, the ownership of the meandered tract is controlled by the laws of the state in which the

lands are situated, and if they hold that such an owner is entitled to claim ownership to the center of the lake, the national courts will follow that rule. If, on the other hand, the surveyors were mistaken or acted fraudulently, and there was at the time of the survey a large tract of land beyond the meander lines, uncovered by permanent bodies of water (exceptional dry seasons, of course, excepted), purchasers of the fractional tracts bounded by the meander lines are not entitled to the land not included in the survey, the meander lines constituting, in that case, boundaries."

The next question which necessarily presents itself for our consideration, therefore, is, What title, if any, does a patentee or grantee of realty abutting upon a non-navigable lake acquire to the bed of the lake, under the law of this state? There is no express constitutional or statutory declaration upon the subject, hence, we are required to ascertain and apply the rules of the common law. Sections 4328–4331, Compiled Laws; Reeves & Co. v. Russell, 28 N. D. 265, L.R.A.1915D, 1149, 148 N. W. 654. See also McKennon v. Winn, 22 L.R.A. 501, and note (1 Okla. 327, 33 Pac. 582).

"The disposal of the present case, therefore, seems to us to require, further, only an answer to the single question, 'What is the common law in regard to the title of fresh-water lakes and ponds?' And on this subject we think there can be but very little difference of opinion." Hardin v. Jordan, 140 U. S. 371, 388, 35 L. ed. 428, 435, 11 Sup. Ct. Rep. 808, 838.

The common-law rules as approved by the United States Supreme Court in Hardin v. Jordan, supra, are stated in Cyc. (40 Cyc. 636–638), as follows: "Land underlying the water of an inland non-navigable lake is the subject of private ownership, and title thereto may be acquired by adverse possession. Where several owners front on the lake, they own the bed of the lake in severalty, their title extending to the center; and the boundary lines of each abutting tract are to be fixed by extending, from the meander line on each side of the tract, lines converging to a point in the center of the lake. But the owner of lands bounding on large navigable lakes and 'great ponds' takes title only to low-water mark."

"The owner of land fronting on a lake or pond is entitled to any land added to his frontage by accretion, or by the recession and withdrawal

of the waters, provided that the process in either case, whether of accretion or reliction, was gradual and imperceptible, and that his land was not originally separated from the water's edge by the intervening property of any other person."

The rules announced in Cyc. are in harmony with our statutory enactments regarding the ownership of the bed of non-navigable streams (Section 5476, Comp. Laws. See also § 5473, Comp. Laws, and Heald v. Yumisko, 7 N. D. 422, 75 N. W. 806), and have the support of the overwhelming weight of authority. See Gouverneur v. National Ice Co. 18 L.R.A. 695, and extended note (134 N. Y. 355, 30 Am. St. Rep. 669, 31 N. E. 865); Olson v. Huntamer, 6 S. D. 364, 61 N. W. 479; Flisrand v. Madson, 35 S. D. 457, 152 N. W. 796; Knudsen v. Osmanson, 10 Utah, 124, 37 Pac. 350; Little v. Williams, 88 Ark. 37, 113 S. W. 340; Lamprey v. State, 52 Minn. 181, 18 L.R.A. 670, 38 Am. St. Rep. 541, 53 N. W. 1139; Lamprey v. Mead, 54 Minn. 290, 40 Am. St. Rep. 328, 55 N. W. 1132; Shell v. Matteson, 81 Minn. 38, 83 N. W. 491; Sherwin v. Bitzer, 97 Minn. 252, 106 N. W. 1046: Tucker v. Mortensen, 126 Minn. 214, 148 N. W. 60; Conneaut Ice Co. v. Quigley, 225 Pa. 605, 74 Atl. 648; Hardin v. Jordan, 140 U. S. 371, 35 L. ed. 428, 11 Sup. Ct. Rep. 808, 838; Grand Rapids Ice & Coal Co. v. South Grand Rapids Ice & Coal Co. 102 Mich. 227, 25 L.R.A. 815, 47 Am. St. Rep. 516, 60 N. W. 681; Lembeck v. Nye, 47 Ohio St. 336, 8 L.R.A. 578, 21 Am. St. Rep. 828, 24 N. E. 686; Farnham, Waters, § 58a.

(6) The trial court adjudged the abutting owners (the respondents) to be the owners of the lands in controversy, but, owing to the fact that the center or centers of the lake had not been determined, the court did not fix the exact amount, or define the boundaries, of the particular tracts belonging to each owner, but left this question open for future determination. The trial court, however, did determine the issues in the action, and adjudged the abutting owners to be the owners of the land in controversy by virtue of their riparian rights. The owners do not complain of the judgment, but appellants assert that the trial court should have determined the exact quantity, and defined the boundaries, of the particular tracts belonging to the various owners. It is difficult to understand why appellants should complain. They have no interest in these lands, and are not concerned with the subdivision thereof.

(7) Appellants assert that there is collusion between the plaintiff and the various abutting owners named as defendants. This assertion is based upon the ground that there is in effect no contest between these parties, and that they were represented by the same attorneys. The contention is untenable. So far as the issues litigated in this action are concerned, the interests of the various abutting owners were identical.

The judgment appealed from is affirmed.