[No. 13574. Department Two. February 20, 1917.]

LOUIS H. DENEE, *Appellant*, v. PETER MORRISON, *Respondent*.[1]

WATERS AND WATER COURSES—UNNAVIGABLE LAKES—BEDS — RE-
CLAIMING—TITLE. Where a United States survey was made in good
faith and designated the meander lines of a body of water which
was in fact a natural, nonnavigable lake, the title to the bed upon
reclaiming the lands from the lake belongs to the littoral owners,
and not to the state or Federal government, and it cannot be settled
upon and entered as unsurveyed government lands.

. Appeal from a judgment of the superior court for Spo-
kane county, Sulivan, J., entered November 15, 1915, upon
findings in favor of the defendant, dismissing an action for
equitable relief, tried to the court. Affirmed.

*Skuse & Morrill* and *Berkey & Cowan*, for appellant.

*Voorhees & Canfield, Post, Avery & Higgins,* and *Don F.
Kizer,* for respondent.

MOUNT, J.—This action was brought by the plaintiff to
restrain the defendant from interfering with the plaintiff in
his settlement and residence upon, and cultivation and im-
provement of, certain unsurveyed government lands, alleged
to have been settled upon by him under the government
homestead act. The complaint alleged that the plaintiff was
a qualified entryman under the homestead laws of the United
States, and that, on the 30th day of October, 1909, he, in
good faith as a homestead settler, for the purpose of mak-
ing a homestead entry thereon and acquiring title thereto,
settled and established his residence on 129 acres of land,
which he alleged to be unsurveyed government land. The
complaint further alleged that, after the plaintiff had set-
tled and established his residence upon the land, the defend-
ant and others wrongfully and unlawfully prevented plaintiff
from occupying, improving, and cultivating the land, and

[1]Reported in 163 Pac. 382.

from continuing the settlement and residence thereon; that, at the time of his settlement, there was no one residing upon the land, and no improvements thereon; that he is the only person claiming the lands under the homestead laws of the United States. He also alleged in his complaint that the government survey of the land was run by a surveyor employed by the United States under contract; that the survey was to be made in a particular manner, according to instructions which were made a part of the contract; that the surveyor violated his duty and instructions, and:

"either erroneously or wrongfully and fraudulently designated the lands . . . lying and being within the meandered lines, . . . as a lake, and by so doing . . . erroneously or wrongfully and fraudulently failed and neglected to survey the same . . . and no part thereof has ever since been surveyed by the government of the United States . . . That the lands lying and being within the meandered lines as made by the survey of said townships and said sections, as aforesaid, were not at the time of such survey, are not now, and never have been, a lake covered by a permanent body of water, and were at the time of such survey, and for a long time prior thereto, partially subject to an overflow during the wet seasons of the year, with none or very little water thereon during the dry seasons of the year, the most of it being hay meadow, . . . susceptible of being readily and easily drained, . . ."

In the answer, it was admitted that the plaintiff was a qualified homestead entryman, but it was denied that the surveyor or the survey wrongfully, erroneously, or fraudulently designated the lands as a lake, or that the lands were wrongfully, erroneously and fraudulently omitted from the survey. The defendant denied that the lands within the meander line were not, at the time of the survey, and never had been, a lake covered by a permanent body of water, and alleged that, at the time of the survey, and immemorially theretofore, the lands within the meander line constituted a lake and were covered by a permanent body of water at all seasons of the year. It was denied that the lands were likely

to dry up, or were susceptible to be readily and easily drained at the time of such survey.

The defendant, for further answer to the complaint, alleged, as an affirmative defense, that the lands claimed by the plaintiff as unsurveyed lands constituted the bed of a nonnavigable lake at the time of the survey, and that, since that time, the defendant and others, who were not parties, had purchased the uplands bordering on the lake, and converted the bed thereof into farming lands, which became thereby a part of the uplands to the center of the lake. Upon the trial of the case upon these issues, the trial court found as a fact that the original survey made by the government surveyor was:

"correctly made and that said meander line was correctly run around said lake, and that there was no fraud or mistake in said survey, or in the meandering of said lake, and that said area within said meander line at the time of said survey was not agricultural land, and was not capable of being cultivated, and lay under a permanent body of water."

The court further found that:

"shortly after the purchase of lands bordering on said lake and the rights of riparian owners in said lake and the bed thereof, the defendant and other abutting owners, in 1892, began an extensive scheme or system of ditching for the draining of said lake, and worked thereon from time to time for a number of years, increasing the ditch which had theretofore been dug in the outlet to a depth for half a mile of eleven to thirteen feet, and constructed through the center of said lake bed from the south end to the north end for a distance of about two and one-half miles a ditch of over three feet in depth and about eight feet wide, which connects with the said streams emptying into the said lake at the south end thereof, . . . That since about the year 1896, the defendant and others have successfully cultivated crops on parts of the area within said meander line, that the lands claimed in plaintiff's complaint are a part of said lake bed, and that in 1909 the plaintiff went upon that part of said lake bed described in his complaint and constructed a house

there and was arrested under a warrant for unlawful tres-
passing thereon, and was removed therefrom by the sheriff
of Spokane county, Washington, and that the plaintiff there-
after remained off of said land until the month of March,
1914, and in the night time on the 10th of said month re-
turned to said land and constructed another house thereon,
and was again removed therefrom under a writ issued out of
the superior court for Spokane county in a suit for forcible
entry and detainer . . ."

Upon these and other findings of similar purport, the trial
court entered an order dismissing the action. The plaintiff
has appealed.

The appellant has not brought to this court the evidence
in the case, but relies upon his contention that no appropria-
tion of public land can be made for any purpose without au-
thority of an act of Congress. It is apparently conceded
that the lands now in question were formerly the bed of a
nonnavigable lake, but it is contended that, since the United
States has not parted with the title to the bed of the lake,
it is still government land, subject to settlement by qualified
homesteaders. All the questions presented upon this appeal
were determined by this court in the case of *Bernot v. Mor-
rison*, 81 Wash. 538, 143 Pac. 104, Ann. Cas. 1916D 290.
That case involved the question of the ownership of the bed
of this same lake. The defendant in that case is also the de-
fendant in this case, and asserted ownership to a part of the
bed of the same lake. In that case, the state of Washington
intervened, claiming that the bed of the lake could not, and
did not, pass to the owners of the abutting upland by patent
from the United States, but that the land forming the bed of
the nonnavigable lake passed to the state of Washington up-
on the admission of the state into the Union. In considering
that case, we said, at page 543:

"The one dominant question in this case is this: Who
owns the bed of Saltese lake, the state of Washington, the
United States, or the proprietors of littoral lands?"

After considering the question of the ownership of the state, and after reviewing at length a number of cases from this court, we concluded by saying, at page 550:

"Every consideration induces the conclusion that the state does not own, and never owned, the bed of Saltese lake."

Further on in the opinion, at page 551, we said:

"Though the state does not own the bed of the lake, we must still address ourselves to the question, who, as between the United States and its patentees of the bordering lands, does own it?"

Then, after considering at length a number of decisions of the supreme court of the United States, among which were *Hardin v. Jordan*, 140 U. S. 371; *Hardin v. Shedd*, 190 U. S. 508, and numerous state cases, we said, at page 558:

"We hold that the common law, as declared by the supreme court of the United States, so far as all unnavigable waters, whether in streams or lakes, are concerned, that is to say, waters not actually navigable, is the common law and rule of decision in this state. We know of nothing in the character of our institutions or in the state of our society militating against its application to all such waters."

We then said, at page 560:

"This case has given us much difficulty. We are satisfied, however, that it must be soundly held that, under the allegations of the complaint and complaint in intervention, title to the bed of this unnavigable lake vested in the patentees of the bordering lands, and that neither the state nor the United States now has any title thereto. . . .

"Of course, we do not decide what would be the result should it transpire as an actual fact that the land included within the meander lines of Saltese lake are not, and never were, in fact, the bed of a lake. That question is not before us. It was presented touching this very land in *Gauthier v. Morrison*, 62 Wash. 572, 114 Pac. 501. The complaint in that case alleged, in substance, that the land included within the meander lines of this lake was wrongfully, erroneously, and fraudulently designated as a lake. A demurrer was sustained to the complaint, and the decision was

affirmed by this court. On writ of error, the supreme court of the United States reversed this court, holding that the complaint stated a cause of action, and remanded the cause for trial. . . ."

See *Gauthier v. Morrison*, 232 U. S. 452.

Under that decision, and the decisions of the supreme court of the United States therein cited, the only question left for decision in this case is whether the original survey was fraudulently made, and whether, as a matter of fact, the lands now claimed by the appellant were the bed of a natural lake at the time the survey was made. As stated above, there was a lengthy trial upon this question. The trial court, after hearing all the evidence, found, as a matter of fact, that the survey was made in good faith; that Saltese lake, at the time of the survey, was a natural, nonnavigable lake, and that, many years after that time, at great expense, the upland proprietors drained the lake, and that the bed thereof is now owned by the owners of the upland, or their successors in interest.

It is not claimed, upon this appeal, that the court was in error in making these findings. We must assume, therefore, that these lands were, at the time of the survey, the bed of a nonnavigable lake, and, being so, under the case of *Bernot v. Morrison, supra*, where the authorities from both this court and the supreme court of the United States are collected and considered, we concluded that the bed of this lake was not the property of the state, nor the property of the United States, but was the property of the littoral owners who had reclaimed the lands from the lake. This conclusion, we think, is fully sustained, not only by this court, in the *Bernot* case, but also in the following cases from the supreme court of the United States: *Hardin v. Jordan*, 140 U. S. 371; *Mitchell v. Smale*, 140 U. S. 406; *Kean v. Calumet Canal & Improvement Co.*, 190 U. S. 452; *Hardin v. Shedd*, 190 U. S. 508; *Marshall Dental Mfg. Co. v. Iowa*, 226 U. S. 460; *Gauthier v. Morrison*, 232 U. S. 452; *French-Glenn*

*Live Stock Co. v. Springer*, 185 U. S. 47; *Whitaker v. McBride*, 197 U. S. 510.

It follows that the judgment of the trial court was right, and it must therefore be affirmed.

MORRIS, HOLCOMB, FULLERTON, and PARKER, JJ., concur.