[No. 13988. Department Two. October 26, 1917.]

JEREMIAH NETERER *et al.*, *Respondents*, v. THE STATE OF WASHINGTON, *Appellant*.[1]

NAVIGABLE WATERS—LAKE—WHAT CONSTITUTES. Findings that a lowland lake covering 275 acres is not a navigable lake within Const., art. 17, § 1, reserving to the state the banks of all navigable rivers and lakes, are sustained where it appears that its greatest depth is four and eight-tenths feet, the average in summer being one and four-tenths feet, its edges and banks were low and marshy and the water filled with vegetation, although in times past it was deeper and had been used to a very limited extent for bathing, boating, fishing, hunting, and skating purposes for which it was no longer useful.

Appeal from a judgment of the superior court for Thurston county, D. F. Wright, J., entered October 13, 1916, upon findings in favor of the plaintiffs, in an action to quiet title, tried to the court. Affirmed.

*The Attorney General* and *R. E. Campbell, Assistant*, for appellant.

*U. G. Gnagey* and *Troy & Sturdevant*, for respondents.

MOUNT, J.—This appeal is from a judgment of the lower court quieting in the respondents title to a portion of the waters and bed of Lake Terrell, in Whatcom county. The state has appealed.

The only question presented is whether Lake Terrell is a navigable body of water within the meaning of § 1 of article

[1] Reported in 168 Pac. 170.

17 of the constitution. This lake is a lowland lake. It now covers an area of about 275 acres. In its deepest place it is four and eight-tenths feet in depth. The average depth, in the summer time, is about one and four-tenths feet, and, in ordinary high water, is from two and one-half to three feet in depth. Around the edges of the lake, the banks are low and marshy. The water is filled with willows, tules, and other vegetation. The evidence tends to show that formerly the lake covered an area of about 400 acres, and was perhaps from seven to ten feet in depth in the deepest place. The outlet was a narrow stream which completely dried up in the summer time, but several years ago, the outlet was deepened so that the water, by means of this outlet and by evaporation, has receded to its present condition.

It is not claimed by the *Attorney General*, as we infer from his argument, that the waters of the lake are, or ever were, navigable for commercial purposes, but it is claimed that the constitutional provision referred to should be construed as creating a division of waters into public and private waters; that those waters which are subject to a public use, such as bathing, boating, fishing, hunting, skating, sailing, and for the removal of ice, watering stock, and other purposes, are navigable public waters; and that those waters which are not subject to public use, but are of a private character, are nonnavigable waters. The constitutional provision referred to is as follows:

"The state of Washington asserts its ownership to the beds and shores of all navigable waters in the state up to and including the line of ordinary high tide in waters where the tide ebbs and flows, and up to and including the line of ordinary high water, within the banks of all navigable rivers and lakes. . . ." Const., art. 17, § 1.

It was shown in the evidence that the waters of this lake had been used some years ago for bathing, boating, fishing, hunting, and skating, and that ice had been removed from the lake, and that some of the water thereof had been used for

watering stock.   While there is evidence in the record that
this lake had been used for such purposes, it was so used to
a very limited extent.   The boats used thereon were flat-bot-
tomed rowboats.   They had been used only for pleasure and
for fishing.   At the time of the trial of the case, there was
no fishing or hunting, and it was shown that the water was
not good even for bathing purposes, because it was muddy
around the shores and filled with weeds, brush, and vegetation.
It was also shown that some logs had been floated in the
lake several years before the trial, but, at the time of the
trial, there were no more logs to be floated in the lake and
the water was not susceptible of carrying logs.   As the lake
receded, the lowlands around the edges were reduced to culti-
vation, and are now so used.

The *Attorney General* argues that, because this lake has
been used in times past for boating, hunting, fishing, and the
like, it is therefore water which has been, and can be, devoted
to public use, and that we should therefore declare the lake
navigable water.   The trial court, after hearing all the evi-
dence, concluded:

"That this lake is not navigable for any purpose   .  .  .
it is apparent that the lake is not suitable even for rowboat
navigation for pleasure purposes; it has marshy shores
which make its approach disagreeable and the lake itself is
only shallow, stagnant water unfit for any use.   .  .  ."

The appellant relies upon the cases of *Lamprey v. State,*
52 Minn. 181, 53 N. W. 1139, 38 Am. St. 541, 18 L. R. A.
670; *Chicago, M. & St. P. R. Co. v. Minneapolis,* 115 Minn.
460, 133 N. W. 169, Ann. Cas. 1912D 1029, 51 L. R. A.
(N. S.) 236; *Attorney General v. Woods,* 108 Mass. 436, 11
Am. Rep. 380, and cases of that character, where it was
held that waters suitable for public use are navigable waters,
but this court has taken a different view.   In the case of *Kalez
v. Spokane Valley Land & Water Co.,* 42 Wash. 43, 84 Pac.
395, where we held that Liberty lake was a navigable lake,
it appeared that the average depth of the water in that lake

was about sixteen feet, and in some places the lake was thirty-five feet in depth, and there was operated upon that lake a steamboat about forty feet in length, for the purpose of carrying visitors and pleasure parties about the lake. We think there can be no doubt that Liberty Lake was a navigable lake within the meaning of the constitution, but that lake is far different from the lake in question here. In the case of *Griffith v. Holman,* 23 Wash. 347, 63 Pac. 239, 83 Am. St. 821, 54 L. R. A. 178, we held that the Little Spokane river, which, during the high water, was of an average width of forty feet, and an average depth of four feet, and which was used to a limited extent for the purpose of pleasure, and for running rowboats up and down said river by persons desiring to fish, was not a navigable river within the meaning of the constitutional provision. In that case we said:

"It is well established that, except in salt-water streams, the question of navigability is one of fact that must be established by those who seek to use it as such; and it is also well established that the stream must be navigable in its natural state, unaided by artificial means or devices. This proposition was announced by this court in *East Hoquiam Boom, etc. Co. v. Neeson,* 20 Wash. 142, 54 Pac. 1001, where it was said: 'It is well settled that a stream which can only be made navigable or floatable by artificial means is not a public highway,' citing many cases to sustain the proposition. In *Rowe v. Granite Bridge Corporation,* 21 Pick. 344, Chief Justice Shaw, delivering the opinion of the court, said: 'Nor is it every small creek, in which a fishing skiff or gunning canoe can be made to float, at high water, which is deemed navigable. But in order to have this character, it must be navigable for some purpose, useful to trade or agriculture.' "

In the case of *Watkins v. Dorris,* 24 Wash. 636, 64 Pac. 840, 54 L. R. A. 199, we held that Elochoman creek, a stream eighteen miles long, with an average width of 100 feet, and a depth of about three feet, which could be used during freshets profitably for floating logs to the Columbia river to market, was not a navigable stream within the meaning of § 1 of article 17 of the constitution. We there said:

"We do not believe, however, that the said constitutional provision was intended to include streams of the character of this one, but only such as are navigable for general commercial purposes."

In *State ex rel. Pealer v. Superior Court*, 58 Wash. 565, 109 Pac. 340, we held that the Humptulips river, which was only navigable in a restricted sense for a distance of three or four miles at high tide, for small boats drawing three and four feet of water, was not a navigable river. And in *Bernot v. Morrison*, 81 Wash. 538, 143 Pac. 104, Ann. Cas. 1916D 290, we held that Saltese lake, which covered 1,400 acres of land, was not a navigable lake. In that case, we said, at page 558:

"We hold that the common law, as declared by the supreme court of the United States, so far as all unnavigable waters, whether in streams or lakes, are concerned, that is to say, waters not actually navigable, is the common law and rule of decision in this state. We know of nothing in the character of our institutions or in the state of our society militating against its application to all such waters."

See, also, *Denee v. Morrison*, 95 Wash. 76, 163 Pac. 382.

We think it is plain that, in the use of the words "navigable waters" within the constitutional provisions above referred to, waters navigable in fact were meant, and not such waters as the lake here in question. If the waters of this lake may be held to be navigable waters, then the waters of all lakes which are mere stagnant marshes, but which are capable of floating a flat-bottomed rowboat or a canoe, may also be held to be navigable waters. We think it is clear that no such idea was meant by the use of the words "navigable waters" in the constitutional provision above referred to.

It follows that the judgment of the trial court must be, and it is, affirmed.

ELLIS, C. J., HOLCOMB, PARKER, and FULLERTON, JJ., concur.