DANIEL SHELL and Another v. J. D. MATTESON and Others.[1]

August 1, 1900.

Nos. 12,118—(229).

### Meandered Lake—Title of Riparian Owners.

The owners of land bordering on the shore of a meandered nonnavigable or dried-up lake own the bed of the lake in severalty. Their title extends to the center of the lake; the boundary lines of each abutting tract being fixed by extending, from the meander line on each side of the tract, lines converging to a point in the center of the lake.

### Same—Power of Legislature.

The legislature has no power or authority to declare by law such separate and independent ownership to be joint and in common between the several owners, and then provide for the partition and division thereof on lines at variance with their rights in severalty.

### Laws 1897, c. 257—Constitution.

Laws 1897, c. 257, *held* unconstitutional, as impairing and devesting vested right in private property.

Appeal by plaintiffs from an order of the district court for Nobles county, P. E. Brown, J., sustaining a demurrer to the complaint. Affirmed.

[1] Reported in 83 N. W. 491.

*C. M. Crandall,* for appellants.
*Daniel Rohrer,* for respondent Matteson.

BROWN, J.

This action was brought under Laws 1897, c. 257, to have the lake bed described in the complaint subdivided into convenient tracts, as provided for by such law. The complaint sets up the ownership of plaintiffs and defendants in and to certain tracts of land abutting upon the shores of a lake known as "East Okabena Lake," in Nobles county; that such lake is a meandered lake of more than one hundred sixty acres in extent; that the waters thereof have in recent years gradually receded and dried up, so that it is not now of sufficient depth to be of any beneficial public use; that the shore owners are unable to agree upon a division of the bed of the lake, and plaintiffs ask that the same be divided and partitioned among such owners as provided for by the act of the legislature aforesaid. Defendant Matteson demurred to the complaint on the ground that it fails to state a cause of action, and, from an order sustaining it, plaintiffs appeal.

The only question presented is the constitutionality of the act of 1897, on which the action is founded. This act is an evident attempt on the part of the legislature, in part, at least, to provide for and facilitate the settlement of controversies and disputes between shore owners concerning rights and boundary lines in dried-up lake beds; and, if it had been limited to a course of procedure with respect to determining such boundary lines, the act could, in all probability, have been sustained. But it goes far beyond this, and invades private rights to such an extent as to render it wholly unconstitutional and void.

The lake sought to be subdivided has not wholly dried up, but, because its waters have receded, has become nonnavigable and wholly unfit for public use. It comes under the head of private waters, as defined by the act. The act classifies all lakes or streams which have been or may be meandered in the government surveys into public and private waters. All such lakes as contain more than one hundred sixty acres, and which are of sufficient depth and volume to be capable of any beneficial public use, are declared to be

public waters; and all lakes of less than one hundred sixty acres, and such as are not capable of any beneficial use to the public, are declared private waters.

Section 2 provides as follows:

"In all cases where any lake belonging to the class of private waters above mentioned has been so meandered in the government survey, the owners of the lands abutting upon the shores of said lake shall be the owners in common of the bed thereof; and for the purpose of this act the bed of such lake shall be deemed to include all the lands within the meander lines * * * and the rights of the respective shore owners in case of the partition of such lake bed as hereinafter provided, shall be in proportion to the length of the meander line upon the tract or tracts owned by each."

Section 4 provides:

"The shore owners of the bed of any such lake, the waters of which are or have become private, under the above classification, may have the same divided and partition of the whole thereof made between the several owners at any time after the same or any part thereof dries up, or any of the waters thereof recede; and if said owners are unable to agree upon a division which is acceptable to all, either * * * may bring an action in the district court * * * to have partition thereof made according to the respective rights of said shore owners."

The section further provides that the lake bed may be subdivided into convenient tracts, alloting separate tracts to each shore owner according to his rights, and, further, that if an equitable division cannot well be made, because of the difference in value in portions thereof, the court may order that the same be subdivided into tracts and sold at public auction, and the proceeds distributed between the shore owners.

It is well settled as the law of this state, and our decisions are supported by the great weight of authority elsewhere, that where a meandered lake is nonnavigable, and in cases where lakes have gradually and imperceptibly dried up, the owner of land bordering on the shore thereof takes to the center or middle of the lake. In other words, the title of the shore owner extends to the center of the lake, the boundary lines of his tract extending from the shore or meander line, on lines converging to a point in the center of the lake

bed; and such lake bed is an incident and an appurtenance to the adjoining lands, and becomes the property of the individual shore owner upon acquiring title to the adjoining land. Lamprey v. State, 52 Minn. 181, 53 N. W. 1139; Municipality v. Orleans, 18 La. 122; 1 Am. & Eng. Enc. (2d Ed.) 469; 4 Am. & Eng. Enc. (2d Ed.) 828. The title to the lake bed passes by a deed of the adjoining land, and is owned in severalty by the shore owners. Their rights therein are fixed and vested, and cannot be arbitrarily taken from them by the legislature. When the legislature interferes with the title to one's property, or with his independent enjoyment thereof, its action is to be judged by those principles of civil liberty and constitutional protection which are guarantied in our system of laws. And, if those principles will not permit or authorize that department of government to take the property of one and confer it upon his neighbor, the act under consideration cannot stand.

As we have stated, the shore owners adjoining lakes of the character of this one own the bed of the lake in severalty; and it cannot be doubted but that such ownership is a vested right, and a right which cannot be taken away by the legislature, except by due process of law, and for some recognized public purpose. It is universally held that statutes which in effect devest and impair vested rights are unconstitutional and void. 6 Am. & Eng. Enc. (2d Ed.) 955, and cases cited in note 2. The right of private ownership in lands is recognized and secured by our laws, and such right is above legislative interference, except in the manner and for the purposes just stated. The act in question is not confined to a method or course of procedure for the settlement or adjustment of the boundary lines between the different owners of such lake beds, but is an attempt to fix and determine the rights of property therein; declaring, contrary to the settled law of the land, that the shore owners are owners in common of the bed of the lake. Instead of providing a method for establishing and locating the boundary lines between such owners, the act cuts the matter short by declaring a joint ownership, and providing for a subdivision thereof on lines at variance with the legal and vested rights of the parties. We believe that

this is such an invasion of private rights as to render the act invalid, and we so hold.

Undoubtedly the legislature may provide for the partition and division of land held and owned in common by several persons, but it cannot declare a separate and independent ownership joint and in common, and then provide for the partition and division thereof on lines at variance and in conflict with the rights of the parties in severalty. The most that the legislature can do in the matter of such lakes is to provide a procedure or method for determining the boundary line between the shore owners.

Order affirmed.