STATE ex rel. SWAN ANDERSON and Others v. DISTRICT
COURT OF KANDIYOHI COUNTY and Another.[1]

July 26, 1912.

Nos. 17,748—(254).

**Uniform stage of water in lakes — proceedings valid.**

In proceedings under the provisions of section 2552, et seq., R. L. 1905,
for raising and maintaining the waters of Foot lake in Kandiyohi county,
certain alleged irregularities are considered, and *held* not fatal to the valid-
ity of the proceedings.

**Same — compensation to riparian owner.**

The rights of riparian owners in land below the ordinary high-water
mark are subject to the superior rights of the public; and, where a lake
or other body of public water is raised to a point not beyond the ordinary
high-water mark, under the authority of the statute referred to above, the
riparian owner is not entitled to compensation.

**Report sustained by evidence.**

The report of the assessors in such proceedings, to the effect that no
lands would be damaged by raising the lake, *held* sustained by the law and
the evidence.

Writ of certiorari to review the order of the district court for
Kandiyohi county, Powers, J., confirming the report of assessors
appointed to assess damages and benefits caused by raising the waters
of Foot lake to a uniform height.   Writ discharged.

*C. A. Fosnes* and *Alfred K. Fosnes,* for relators.
*George H. Otterness* and *T. O. Gilbert,* for respondents.

BROWN, J.

Certiorari to review the order of the district court of Kandiyohi
county confirming the report of assessors appointed in proceedings
under section 2552, et seq., R. L. 1905, to raise and maintain the
waters of Foot lake at a fixed and uniform height.

It appears from the record that Foot lake is a large navigable

[1] Reported in 137 N. W. 298.

body of water, wholly within Kandiyohi county, covering an area of about fifteen hundred acres, and partly within the corporate limits of the city of Willmar, a city of forty-five hundred population. For many years the waters of the lake have gradually receded, either from natural causes or the lowering of the outlet thereof, and the level of the water therein was, at the time the proceedings were commenced, far below the ordinary high-water mark.

On November 25, 1910, the board of county commissioners, acting upon its own motion and under and pursuant to the provisions of the statute above cited, adopted a resolution providing for raising the lake to its normal level and height. The resolution recites the condition of the lake, many pertinent facts, and, further, that the interests of navigation and public health require a restoration of the lake to its former condition. The particular height to which the board deemed necessary to raise the lake was set forth in the resolution, and was based upon conditions existing in April, 1910, and is below the ordinary high-water mark. The resolution also provided for the erection of a dam at the outlet of the lake, for the purpose of maintaining the water at the level intended; and, further, that it would not be necessary to acquire any land by condemnation or otherwise for the completion of the project, the entire cost of which, the board determined, would amount to $800. The action of the board was taken after due deliberation and a full investigation and consideration of the rights and interests of the public, as well as riparian property owners.

A certified copy of the resolution was filed with the clerk of the district court, and application thereafter made to the court, as provided for by section 2554, for the appointment of assessors for the assessment of damages and benefits. Due notice of the application was given, as required by the statute, and upon the hearing thereof assessors were duly appointed by the court. One assessor so named subsequently resigned, and another was appointed in his place. The assessors duly qualified and entered upon the discharge of their duties. Hearings were had before them, and all persons interested appeared and offered evidence in support of or in opposition to the proposed work, as well as upon the question of dam-

ages or benefits. These assessors subsequently made written report to the court of the result of their consideration of the evidence presented. They found that the proposed improvement was necessary for the purposes of navigation and for the promotion of the public health; that the proposed raise of the waters of the lake would not extend beyond the ordinary high-water mark; that no land adjacent to the lake would be damaged thereby or benefited therefrom; and that the cost of the improvement should be borne by the county. The court, after due notice and hearing, made its order confirming the report; whereupon relators, riparian owners, sued out the writ by which the proceedings are brought here for review.

The points made by relators in support of the contention that the proceedings below should be set aside may be stated under two general propositions: (1) That certain alleged failures to comply with the statute deprived the county board and the court below of jurisdiction; (2) that the assessors, in reporting to the court that no property would be damaged by the proposed improvement, proceeded under a misapprehension of the evidence, upon erroneous principles of law and obvious mistake of fact.

The alleged defects in the proceedings do not require extended mention. It is insisted that the first step, in the orderly course of procedure under the statute, is the institution of proceedings to condemn land necessary to carry out the purposes of the project, and that, since no such proceedings were commenced in the case at bar, the board was without jurisdiction. The contention is not sustained. While section 2552 provides for and authorizes condemnation proceedings for the purposes stated, it is clear that the commencement thereof, when no land is to be acquired, is wholly unnecessary. No purpose could be subserved by the proceeding, and to conduct it would be a meaningless ceremony. It is probable that in cases where land must be acquired by condemnation, proceedings for that purpose would necessarily precede any definite action by the board looking to final action ordering the improvement; for the cost and expense incident to the work must be "ascertained with reasonable certainty" and reported to the court on the application for the appointment of assessors. But, where the acquisition of land is wholly

unnecessary, the situation is entirely different. In the case at bar, the county board fully investigated the matter and determined in advance that no land was necessary to be taken or condemned, and so reported to the court in and by the resolution ordering and declaring the propriety of the improvement.

For the same reason, there was no fatal error in the failure of the court more specifically to specify the "maximum sum which may be assessed upon benefited lands," as required by section 2554. The order of the court was "that in case any lands are benefited by the raising and maintaining of the waters of said Foot lake, the assessors shall then assess such benefited lands * * * not [to] exceed the rate of $150 for each acre thus benefited." If there be any error in the order so made, it is wholly without prejudice, for the reason that no lands were to be assessed for benefits at all. The commissioners so determined, and the assessors so reported to the court.

If we correctly understand counsel's further contention, it is that, since there were no lands benefited and which could be assessed to defray the cost and expense of the improvement, the proceedings are void. In other words, that an improvement of this character cannot be made, unless the cost and expense thereof may be defrayed by assessments upon benefited property. This contention is answered, it would seem, by section 2558, wherein it is provided that so much of the cost of making the improvement as is not paid by assessment shall be paid by the county. Since no part of the expense was raised by assessments, the whole thereof falls upon the county.

2. The further contention that the report of the assessors should be set aside as not justified by the evidence is not sustained. Section 2556 provides that the court, upon the application for confirmation of the report of the assessors, shall consider all objections thereto; "but objections to the amount assessed shall be disregarded, unless it be made to appear that in fixing such amount the assessors were governed by improper motives, or acted upon erroneous principles, or under obvious mistake as to the facts."

Our examination of the record will not permit the conclusion required by the statute as the basis for interference with the assess-

ment made. State v. District Court of Hennepin County, 83 Minn. 464, 86 N. W. 455. There is no suggestion that the assessors were governed by improper motives; but it is claimed that the riparian rights of the relators were entirely ignored in the conclusion that they would suffer no damage by raising the lake. The claim is that certain rights of accretion and reliction became attached to the lands of relators by the gradual recession of the water of the lake, of which they cannot be deprived without compensation. The rights of riparian owners in this respect were fully considered by the court in Carpenter v. Board of Commrs. of Hennepin County, 56 Minn. 513, 58 N. W. 295, where it was held that riparian rights below the ordinary mark of high water were subject to the superior right of the public, and that a taking thereof by the authorities for a public use, as by raising the waters of a lake for purposes of navigation or the public health, was a damage for which no recovery could be had. The same rule was followed and applied in Stenberg v. County of Blue Earth, 112 Minn. 117, 127 N. W. 496, and other cases. 3 Notes to Minn. Cases, 1117.

It is probably true that, by the reason of the recession of the water of the lake in years gone by, shore land has been exposed and made suitable for agricultural purposes. But all thereof within the ordinary high-water mark is subject to reclamation by the public for the interests of the general welfare, and the rights of the riparian owner must yield to that right. The assessors acted upon this theory, and rightly so. Nor can the riparian owners claim the same by adverse possession, as suggested by counsel. Chapter 65, p. 65, Laws 1899; R. L. 1905, § 4072; Murtaugh v. Chicago, M. & St. P. Ry. Co. 102 Minn. 52, 112 N. W. 860, 120 Am. St. 609; City of Hastings v. Gillitt, 85 Minn. 331, 88 N. W. 987. It is not claimed that any rights by adverse possession accrued prior to the passage, in 1899, of chapter 65, supra, by which the rule theretofore followed, as respects the application of statutes of limitation against the public, was abrogated.

This covers all questions necessary to be considered, and results in the conclusion that the proceedings below were in conformity with the law and must be sustained.

Writ discharged.