### JACKSON-WALKER COAL & MATERIAL CO. v. HODGES et al.

(District Court, D. Kansas, First Division. May 1, 1918.)

No. 16-N.

1. Navigable waters ⬅2—State may fix rights of riparian owners.

A state, vested by the act of admission to the Union with plenary jurisdiction and power over the beds of navigable streams within its borders, may establish such rules as it deems proper for the government of riparian rights along such streams.

2. Navigable waters ⬅1(2)—Navigability a question of local law.

Whether a stream is navigable, for the purpose of determining riparian rights therein is not a question of present navigability in fact, to be determined by a jury in each case, but one of local law, which may give the stream a permanent status.

3. Navigable waters ⬅1(6), 36(1)—Arkansas river in Kansas is navigable stream; title to bed of river in state.

The Arkansas river in Kansas, under the law of the state, is a navigable stream throughout its course, regardless of its navigability in fact

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

at any particular place, and title to the bed of the stream is in the state, and not in riparian owners.

In Equity. Suit by the Jackson-Walker Coal & Material Company against George H. Hodges and others. On final hearing. Decree for defendants.

Henry C. Sluss, of Wichita, Kan., for plaintiff.

S. M. Brewster, Atty. Gen., and Fred S. Jackson, of Topeka, Kan., for defendants.

POLLOCK, District Judge. This suit was brought by the plaintiff against certain officials of the state to restrain them from enforcing or attempting to enforce against plaintiff an act of the Legislature of the state which provides, as follows:

"An act relating to the sale and taking of sand, oil, gas, gravel, mineral and any natural product whatsoever from the bed of any river which is the property of the state or any island therein, and relating to the taking and sale of hay, timber and other products of lands lying in the bends of such rivers; prescribing certain powers and duties of public officers in relation thereto; and prescribing penalties, and repealing inconsistent legislation.

*    *    *    *    *    *    *    *    *    *

"Section 1. That from and after the taking effect of this act it shall be unlawful for any person, partnership or corporation to take from within or beneath the bed of any navigable river or any other river which is the property of the state of Kansas any sand, oil, gas, gravel or mineral, or any natural product whatsoever from any lands lying in the bed of any such river or any hay, timber or other products belonging to the state except in accordance with this act.

"Sec. 2. Whenever any person shall desire to take from any such river any sand, gravel, oil, gas or mineral, or from any land in such river any hay, timber or other products, he shall first obtain the consent of the Executive Council of the state of Kansas and upon such terms of payment to the state of Kansas and under such terms and conditions as the said Executive Council may determine to be just and proper. Such compensation to the state of Kansas shall be paid at such times and under such terms of supervision as the said Executive Council may direct: Provided, that no contract shall be entered into giving any person, company or corporation any exclusive privilege of making purchases under this act; and provided further, that nothing herein shall prevent the taking without payment therefor of any sand or gravel to be used exclusively for the improvement of public highways or to be used exclusively in the construction of public buildings or for other public use or to be used exclusively by the person taking same for his own domestic use: Provided, however, that where any navigable stream extends into or through any drainage district in the state, organized under chapter 215 of the Session Laws of 1905, and the amendments thereto, the board of directors of such district shall be entitled to one-third of the proceeds of such natural products or minerals which the state may sell from within or beneath a portion of the channel of such streams lying within such district, and said one-third of the proceeds arising from any such sale shall be paid to the treasurer of such drainage district and shall be expended only by such district for any of the purposes for which such district was created. The other two-thirds of such proceeds to be paid into the state treasury as in case of channels of rivers lying outside of such drainage district: Provided further, that the Executive Council may make such rules and regulations as in its judgment may be deemed necessary for the collection of such proceeds and the manner and conditions under which sand or other material may be taken from the stream within such drainage district.

"Sec. 3. The Executive Council is hereby authorized to make and publish in the official state paper all needful rules, terms and conditions for the taking, purchasing or selling of the articles and products mentioned in this act, and to change the same as the rights of the state and the interests of the public may require, and to make any necessary and reasonable expenses to carry the same into effect, which expenses shall be paid out of the gross proceeds of the sale of the materials covered by this act.

"Sec. 4. It shall be the duty of the Attorney General, or any county attorney on direction of the Governor, to bring any suit necessary or proper to protect the property rights of the state under this act; and any district court of competent jurisdiction may enjoin any violation of this act, and may award to the state adequate civil damages for any breach thereof.

"Sec. 5. The net proceeds derived from the sale of any state property under this act shall be paid to the state treasurer under such regulations as the Executive Council shall provide and shall inure to the general revenue fund of the state of Kansas, except as to moneys which are derived from the sale of property taken from school land islands, which latter funds shall inure to the benefit of the permanent school fund.

"Sec. 6. For the purposes of this act the bed and channel of any river in this state or bordering on this state to the middle of the main channel thereof and all islands and sand bars lying therein shall be considered to be the property of the state of Kansas unless this state or the United States has granted or conveyed an adverse legal or equitable interest therein since January 29, 1861, A. D., or unless there still exists a legal adverse interest therein founded upon a valid grant prior thereto: Provided, that nothing in this act shall affect or impair the rights of any riparian landowner or lawful settler upon any island which is state school land.

"Sec. 7. The Executive Council is authorized and empowered to call to its assistance in the administration of this act all county and township officers, and it is hereby made the duty of every such officer to aid in the enforcement of this act.

"Sec. 8. Any person or corporation violating any provision of this act shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than twenty-five dollars nor more than one thousand dollars, or by imprisonment in the county jail for not more than six months or by both such fine and imprisonment; and for purposes of prosecution it shall be prima facie proof that the river bed or island involved in such suit is the property of the state to show by the records of the county clerk and register of deeds that the same is not recorded as patented by the United States or by the state of Kansas or recorded as school land sold but not yet patented by the state of Kansas, or otherwise held by record title.

"Sec. 9. This act shall be liberally construed to promote its object and if any competent court shall adjudge any provision thereof to be unconstitutional such judgment shall not affect the other provisions of this act."

Laws Kan. 1913, c. 259.

The ground upon which the plaintiff proceeds is that the attempted and threatened acts of the defendants to enforce the provisions of said law against it will deprive it of its property without due process of law, and for the reason, as contended by plaintiff, the bed of the Arkansas river at or near the city of Wichita, Sedgwick county, this state, is the property of and belongs in fee to the plaintiff, and does not belong to the state. That the state has neither title nor right in it and no power to exact a revenue from it. This claim of title in plaintiff is based on the fact that it is the owner in fee of a tract of land described in the petition, as follows:

"A certain tract of land situated in the county of Sedgwick in the state of Kansas, and lying within the boundaries of the city of Wichita; the said tract being bounded on the south by Orme street in said city, and extending thence north to Kellogg street in said city, and thence north to Dewey street

in said city, and bounded on the north by a line running east and west 125 feet north of said Dewey street, and on the west by the middle line of a certain stream or water course commonly known as the Arkansas river, and on the east by a line running north and south at an average distance of three hundred feet east from the east bank of said stream."

That the land borders on the river, and that the Arkansas river at this place is not in fact a navigable stream but is nonnavigable; hence plaintiff's title to the tract extends to and covers the bed of the river to the thread of the stream, and extends over and includes within it the place from which the sand is taken.

Other parties engaged in the business of taking and marketing sand from the bed of the Arkansas river at other points have asked and obtained leave to intervene in this suit, to wit, the Arkansas City Sand Company, the Arkansas River Sand Company, and the Schwartz Lumber & Coal Company. On issues joined and on full proofs taken, and briefs and arguments of solicitors for the respective parties, the case stands submitted for final decree.

The sole question presented in the case for determination is this: Is the Arkansas river, in the county of Sedgwick, near the city of Wichita, at the point where plaintiff engages in the business of taking sand from the bed of the river, a navigable stream? If not, confessedly the plaintiff's ownership of the tract of land in question extends to the middle of the stream, and covers the sand heretofore and now being removed by it therefrom, and defendants have no claim thereon as representatives of the state under the act quoted. However, if the stream at this point is navigable, the bed of the stream confessedly belongs to the state, and the act above quoted is applicable, and the complaint must be dismissed for want of equity.

In determining this question of the navigability of the Arkansas river at the point in question, the first and controlling problem presented is this: What is meant by the term "navigable," as applied to the subject-matter of this case? On this the parties differ. The plaintiff contends in argument the sole question is: Is the Arkansas river at this point now, or has it ever been within the history of the state, navigable in fact? While the defendant contends the navigability of the river at this place is a question governed and controlled by local law of the state. In other words, the defense contends the term "navigable," as employed in litigation of this character, denotes a fixed and established status or condition under the local law of the state, binding on all parties in all matters in litigation of this character, as contradistinguished from the ever-changing rule of navigability in fact, which must be determined as a fact in each recurring case, and only for the purpose of decision in that case.

It is readily apparent these conflicting views must be considered, and the true rule of decision in cases of this character ascertained to avoid most incongruous results; for, if the term be defined as contended by plaintiff, and the question in each individual case as it arises must be investigated and determined solely as one of fact, it may then well happen the Arkansas river will be declared to be nonnavigable at Wichita, and navigable up the river from that point at Hutchinson, or below at Arkansas City; and, applying the rule of property confessed by both

parties in this suit to exist and be in force in this state, the adjoining riparian proprietors of land at Arkansas City, below Wichita, on the river, and at Hutchinson, above, would take and hold his land only to the bank of the stream because the river would there be declared to be navigable, while the adjoining proprietor at Wichita would by his conveyance take, hold, and own to the center of the river, as it would have been there determined as a matter of fact to be nonnavigable. For, the common law having been expressly adopted in this state in aid of its statutes, and it being the doctrine of the common law the proprietor of lands adjoining upon nonnavigable streams takes and owns to the middle or thread of the stream, but takes only to the bank of the navigable streams, it is clear the question of the navigability or nonnavigability of the stream thus becomes a rule of property in the state, and, being such rule of property, must be invariable.

This case involves, as has been seen, solely a question of property rights in a portion of the bed of the Arkansas river. It becomes a question of the utmost and controlling importance to first determine whether the question of the navigability of the Arkansas river at the locus in quo shall be determined as a question of fact, as contended by plaintiff, or a question of local law of the state, as contended by defendants. There can be no question but that, under the act of admission into the Union in the year 1861 (12 Stat. 126), the state of Kansas was granted the same rights of sovereignty and jurisdiction over the beds of navigable streams as was granted to the original states. This state, as was said by Mr. Justice McKinley, of the state of Alabama, in Pollard's Lessee v. Hagan et al., 3 How. 212, 11 L. Ed. 565—

"was admitted into the Union, on an equal footing with the original states, she succeeded to all the rights of sovereignty, jurisdiction, and eminent domain which Georgia possessed at the date of the cession, except so far as this right was diminished by the public lands remaining in the possession and under the control of the United States, for the temporary purposes provided for in the deed of cession and the legislative acts connected with it. Nothing remained to the United States, according to the terms of the agreement, but the public lands."

[1] Hence it would seem to be well settled that, as this state was by the federal act of admission granted plenary jurisdiction and power over the beds of navigable streams within its borders, it could establish such rules as it deemed proper for the government of riparian rights along such streams. As was said by Mr. Justice Bradley in Barney v. Keokuk, 94 U. S. 324, 24 L. Ed. 224:

"It is for the states to establish for themselves such rules of property as they may deem expedient with respect to the navigable waters within their borders and the riparian lands adjacent thereto."

[2] The apparent confusion found in the adjudicated cases involving questions arising over the navigability of waters in our country, in some of which the test applied is navigability in fact, and others navigability in law, on a more careful study and analysis of the subject-matter of the litigation in dispute in such case, will be seen to be merely apparent, and not real, and to spring from our dual form of government. When the question is one arising out of the navigation of the stream, such as an obstruction to navigation, which, by reason of the

federal Constitution, falls under the authority of the Congress, there the test applied is: Is the water navigable in fact? But, when the subject-matter of the litigation involved is a property right, as the right of a riparian owner, such as in this case, the test applied is this: Is the stream a navigable one under the local laws of the state, established for the purpose of settling property disputes? In other words, what has the law-making power of the state declared the rule of property in such state to be, as defined by express legislative enactments or by the highest judicial tribunal of the state? That this is the true rule of decision is nowhere more clearly stated than by Mr. Justice Pitney, delivering the opinion for the court in Donnelly v. United States, 228 U. S. 243, 33 Sup. Ct. 449, 57 L. Ed. 820, Ann. Cas. 1913E, 710, where it is said:

"It *properly belongs to the states by their inherent sovereignty,* and the United States has wisely abstained from extending (if it could extend) its' survey and grants beyond the limits of high water. The cases in which this court has seemed to hold a contrary view depended, as most cases must depend, on the local laws of the states in which the lands were situated. The doctrine thus enunciated has since been adhered to. Packer v. Bird, 137 U. S. 661, 669; Hardin v. Jordan, 140 U. S. 371, 382; Shively v. Bowlby, 152 U. S. 1, 40, 58; St. Anthony Falls Water Power Co. v. Water Commissioners, 168 U. S. 349, 358; Scott v. Lattig, 227 U. S. 229, 243. The question of the navigability in fact of non-tidal streams is sometimes a doubtful one. It has been held in effect that what are navigable waters of the United States within the meaning of the act of Congress, in contradistinction to the navigable waters of the states, depends upon whether the stream in its ordinary condition affords a channel for useful commerce. The Montello, 20 Wall. 430; Leovy v. United States, 177 U. S. 621, 632; United States v. Rio Grande, 174 U. S. 690, 698; South Carolina v. Georgia, 93 U. S. 4, 10; The Parsons, 191 U. S. 17, 28. But it results from the principles already referred to that what shall be deemed a navigable water within the meaning of the local rules of property is for the determination of the several states. Thus the state of California, if she sees fit, may confer upon the riparian owners the title to the bed of any navigable stream within her borders."

In Kansas v. Colorado, 206 U. S. 46, 27 Sup. Ct. 655, 51 L. Ed. 956, Mr. Justice Brewer, speaking for the court, says:

"But it is useless to pursue the inquiry further in this direction. It is enough for the purposes of this case that each state has full jurisdiction over the lands within its borders, including the beds of streams and other waters."

In United States v. Chandler-Dunbar Co., 229 U. S. 53, 33 Sup. Ct. 667, 57 L. Ed. 1063, Mr. Justice Lurton, delivering the opinion for the court, said:

"The technical title to the beds of the navigable rivers of the United States is either in the states in which the rivers are situated or in the owners of the land bordering upon such rivers. Whether in one or the other is a question of local law. Shively v. Bowlby, 152 U. S. 1, 31; Philadelphia Company v. Stimson, 223 U. S. 605, 624, 632; Scott v. Lattig, 227 U. S. 229. Upon the admission of the state of Michigan into the Union the bed of the St. Marys river passed to the state and under the law of that state the conveyance of a tract of land upon a navigable river carries the title to the middle thread. Webber v. Pere Marquette, etc., 62 Michigan, 626; Scranton v. Wheeler, 179 U. S. 141, 163; United States v. Chandler-Dunbar Water Power Co., 209 U. S. 447."

[3] From the foregoing and many other cases that might be cited controlling here, it is made plain, the question here presented being

one controlled by the property rule of the state, when we ascertain what the established rule of the state is, that rule is controlling. This question has many times received consideration by the Supreme Court of the state. In the case of Dana v. Hurst, 86 Kan. 947, 122 Pac. 1041, it was held:

"The title to the bed of the Arkansas river within the boundaries of Kansas is in the state."

In delivering the opinion in that case, Mr. Justice West said:

"The one clear question on which a decision is sought is: Who owns the bed of the river? It is argued that from public records, declarations, and enactments we should judicially regard the river as set apart for a public highway for interstate commerce; its bed thereby vesting in the state. It is not pretended that the river is now navigated or navigable in fact in Kansas, and the court, as well as everybody else, know that it is not. But does this conclude the matter? * * *"

After reference to the public acts of the Congress, the territory, and the state, and the many adjudicated cases, the justice, delivering the opinion for the court, concludes:

"In answer to all this it may be said that the only sensible and practicable basis of determination is the familiar one of present navigability in fact, and that to hold that this stream is navigable is equivalent to ruling that sand may be navigated. But let it be said once more that present navigability is not and cannot be determinative. If we are forced to hold that the river was navigable in fact when set apart as a public highway, then we are compelled to hold that it is still thus set apart, or else that in some way this setting apart has been abrogated, the power of the government lost, and the title to the bed of the stream diverted. We have been pointed to no reason or authority for holding the latter, and can find none. There is no indication in any public act or declaration that the intention was to set apart for a public highway only so much of a stream as might from time to time, without improvement, remain navigable in fact. We must meet conditions as we find them. As already suggested, this stream is now navigable for more than 600 miles above its mouth, and the testimony showed that within the present generation actual navigation was to a slight extent carried on as far up as Wichita. It seems anomalous and absurd that it must be left for a jury to say that the same stream, of the same general width, volume, and character, may, during its hundreds of miles flow through this state, be at one point navigable in fact now, and at another not, and then that it must be held that at one of such places it is also navigable in law and at the other unnavigable in law; it being within the possibilities that still another jury might find that the same stream still higher up is navigable. Thus the title to the bed would be left shifting and uncertain, according to the way different juries might determine the question as a matter of fact. The question as to when a stream once navigable ceases to be so by nonuse, or by the accumulation of sand or soil, is one on which we have been afforded no light. But, considering the character, width, and length of the river, the various acts and declarations by Congress in reference thereto, and the policy shown thereby with reference to waters which more than 100 years ago were navigable according to the needs and uses of that time, and which led into the Mississippi, we deem it justifiable to hold, and do hold, that, while the stream is not now navigated in fact anywhere in Kansas, it has nevertheless not ceased to be a highway set apart by national act and declaration for public use in the manner and at the time to be determined upon by the federal government. This being true, the title to the bed is in the state, and islands therein, not surveyed or claimed by the government, belong also to the state, and under the act of 1907 may be sold as school land. Laws 1907, c. 378; Gen. Stat. 1909, § 8202. It is not the ordinary ques-

tion of navigability in law, depending upon present navigability in fact. It is one rather of governmental intention, declaration, acts, and power considered in connection with the character and history of the stream."

See, also, Wood v. Fowler, 26 Kan. 682, 40 Am. Rep. 330; Kregar v. Fogarty, 78 Kan. 541, 96 Pac. 845; Norman S. Wear et al. v. State of Kansas ex rel. S. M. Brewster, Attorney General, Kan., 245 U. S. 154, 38 Sup. Ct. 55, 62 L. Ed. 214, Ann. Cas. 1918B, 586, recently affirmed by the Supreme Court of the United States, in which Mr Justice Holmes, delivering the opinion for the court, says:

"Then it was said, if navigability in fact is the test, the plaintiffs in error were entitled to go to a jury on that fact, as it was in 1860, the date of the original grant, and the Supreme Court of the state was not entitled to take judicial notice that the river was navigable at Topeka. But there is no constitutional right to trial by jury in such a case, and if a state court takes upon itself to know without evidence whether the principal river of the state is navigable at the capital of the state we certainly cannot pronounce it error. In this aspect it is a question of state law. Donnelly v. United States, 228 U. S. 243, 262. See Archer v. Greenville Sand & Gravel Co., 233 U. S. 60, 68, 69. The fact is of a kind that should be established once for all, not perpetually retried. The court had, too, in favor of its decision, the circumstance that the stream was meandered in the original surveys; the decisions of its predecessors, Wood v. Fowler, 26 Kan. 682; Topeka Water Supply Co. v. Porwin, 43 Kan. 404, 413; Johnston v. Bowersock, 62 Kan. 148; Kaw Valley Drainage District v. Missouri Pacific Railway Co., 99 Kan. 188, 202; Kaw Valley Drainage District v. Kansas City Southern Ry. Co., 87 Kan. 272, 275, S. C. 233 U. S. 75; legislation of the state, Private Laws of 1858, c. 30, § 4, c. 31, § 4, c. 34; 1860, c. 20, § 3, etc.; and of the United States, Act May 17, 1886, c. 348, 24 Stat. 57; Act Jan. 22, 1894, c. 15, 28 Stat. 27; Act July 1, 1898, c. 546, 30 Stat. 597, 633, etc.; and the assent, so far as it goes, of this court, Kansas City Southern Ry. Co. v. Kaw Valley Drainage District, 233 U. S. 75, 77; not to speak of the allegations in the answers of the Wear Sand Company, adopted, notwithstanding his denial of navigability by Fowler, the other plaintiff in error before this court."

While, from a consideration of the proofs taken and submitted in this case, and from that general knowledge common to all men, there can be no possible doubt whatever the Arkansas river at the point in controversy in this case is not now, and has not, since its known history, been navigable in point of fact; that is to say, the stream in its ordinary condition does not afford a channel for useful commerce, hence is not navigable within the meaning of acts of Congress on that subject as defined in The Montello, 20 Wall. 430, 22 L. Ed. 391; Leovy v. United States, 177 U. S. 621, 20 Sup. Ct. 797, 44 L. Ed. 914; United States v. Rio Grande Irrigation Co., 174 U. S. 690, 19 Sup. Ct. 770, 43 L. Ed. 1136; South Carolina v. Georgia, 93 U. S. 4, 23 L. Ed. 782; The Robert W. Parsons, 191 U. S. 17, 24 Sup. Ct. 8, 48 L. Ed. 73, and many other cases. However, from what has gone before, it must, I think, be held, in this case, the navigability of the stream in point of fact is not the true test. On the contrary, the true test is whether the Arkansas river at the locus in quo must be regarded as navigable under the local laws of the state of Kansas, as ordained and established for the purpose of the unvarying determination of the property rights of riparian owners along its course through the state. That by the local property rule established in this state, once for all, the title to the

bed of the Arkansas river within the state is vested in the state and not in the adjoining riparian owner.

It follows, the petition of plaintiff, being without equity, must be dismissed.

It is so ordered.

---

## In re AMES.

(District Court, E. D. Michigan, N. D. September 22, 1922.)

No. 1098.

1. **Bankruptcy ⊗⟶184(2)—Chattel mortgages ⊗⟶6—Sales contract held intended as mortgage, and invalid for want of record.**

A contract under which store fixtures were delivered to bankrupt, in which he was called "buyer," and the other party "seller," and by which he was absolutely obligated to pay the "purchase price" in installments, with interest, which also contained a provision retaining title in the seller until full payment, with the option in case of default to rescind the contract, or affirm and sue "as for a breach," *held*, under the law of Michigan, a conveyance of title with a reservation, intended to operate as a chattel mortgage, within Comp. Laws Mich. 1915, § 11988, and invalid against the trustee for want of record.

2. **Courts ⊗⟶366(14)—Contracts governed by law of state.**

Where a contract by a bankrupt was made and to be performed within a state, the decisions of the highest court of the state are controlling as to its construction and effect.

In Bankruptcy. In the matter of Ernest E. Ames, bankrupt. On review of order of referee denying petition of the Peter Smith & Sons Grocery Company for reclamation of property. Affirmed.

Edward S. Clark, of Bay City, Mich., for petitioner.

Coumans & Gaffney, of Bay City, Mich., for trustee.

---

⊗⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes