STATE EX REL. COUNTY OF JACKSON v. DISTRICT COURT OF THIRTEENTH JUDICIAL DISTRICT IN AND FOR COUNTY OF NOBLES AND ANOTHER.

STATE EX REL. JAMES W. FOSTER v. SAME.

STATE EX REL. MARGARET THOMPSON v. SAME.[1]

June 18, 1920.

Nos. 21,710, 21,711, 21,712.

**Drainage of meandered lake — order of county board fixing lake level.**

    The final order in the ditch proceeding here involved directed the draining of a meandered lake pursuant to G. S. 1913, § 5523, as amended. Formerly the lake was of considerable depth, with well defined banks and sandy beaches, and was concededly a public or navigable lake. Its outlet was damaged by freshets and worked back into the rim of the

[1]Reported in 178 N. W. 595.

lake, and the waters receded, and there was some filling in of muck, and vegetable growth appeared and the lake became of less public use. Shortly after the commencement of the ditch proceeding, and before the first hearing, the county board fixed the level of the lake, pursuant to G. S. 1913, § 5438, et seq. at a point below high-water mark. A dam was built at the outlet and the lake assumed the proportions of a public or navigable lake. It is *held* that, with the lake in the condition stated and more definitely described in the opinion, the order of the county board was valid, that it should have been given effect and that the lake should not have been drained.

Upon the relation of the county of Jackson, James W. Foster and Margaret Thompson, respectively, the supreme court granted its writs of certiorari directed to the district court of the Thirteenth judicial district for Nobles county, the Honorable L. S. Nelson, judge thereof, and J. P. Martin, clerk, to review the proceedings in that court as to the drainage of Round lake. Reversed.

*E. H. Nicholas,* County Attorney, and *Putnam & Carlson,* for relators.

*S. S. Smith* and *Wilson Borst,* for respondents.

DIBELL, J.

Certiorari to review the final order of the district court of the Thirteenth district, of date September 8, 1919, establishing a judicial ditch in Nobles and Jackson counties.

The ditch, if constructed, will drain Round lake, a meandered lake in Jackson county, and the controversy presented by the writ relates to this lake.

The county boards and the district courts are given authority by statute "to drain in part or in whole meandered lakes which have become normally shallow and of a marshy character, or which are no longer of sufficient depth or volume to be of any substantial public use for fishing, boating or water supply." Laws 1915, p. 426, c. 300, § 1, amending G. S. 1913, § 5523. The act of 1915 was in effect when the ditch proceeding was begun and the amendment of 1917 does not change its effect in any respect material here. Laws 1917, p. 694, c. 441, § 3.

On August 24, 1916, there was filed in Nobles county a petition for a judicial ditch draining a large area of land in Nobles and Jackson

counties, including Round lake in Jackson county. The land to the north and west of the lake was to be drained through it and through the natural outlet to the east or southeast. On September 6, 1916, the date of hearing was fixed for October 16, 1916. On September 18, 1916, the county board of Jackson, in a proceeding pending before it under G. S. 1913, § 5438, and sections following, resolved to establish a uniform height of water in Round lake. Section 5438 is as follows:

"When the whole or major part of any navigable lake is situated in a single county, the county board, in order to improve navigation thereon or to promote the public health or welfare, may establish a uniform height at which the waters of such lake shall be held, and may erect and maintain all dams necessary to such holding. And it may acquire, in the name of the county, by gift or purchase, or by condemnation proceedings under chapter 41, any existing dam which may affect the level of such waters, and all other lands and property needful or convenient in fully carrying out the purposes hereof."

The county board may consider the establishing of the level for which the section quoted provides upon the petition of one or more owners of land abutting upon the lake, or it may proceed upon its own motion.

A similar statute, without procedural provisions, is G. S. 1913, § 746, authorizing the county board to appropriate money for the erection and maintenance of dams to keep the water of a lake at its natural height.

The meander lines of Round lake are wholly in Jackson county, and, as we view the evidence, the major portion of the lake, even when there is included that outside the meander lines, is in Jackson county within the meaning of the statute cited.

The proceeding before the county board resulted in an order of October 9, 1916, fixing the normal stage of water at a level approximately three feet lower perpendicularly than the meander line of the lake.

At the hearing in the ditch proceeding on October 16, 1916, the objectors to the ditch presented to the court and filed the proceedings before the Jackson county board, including the order of October 9. The court overruled their objections. On October 25, 1916, the court appointed an engineer. Subsequent proceedings resulted in a final order of date September 8, 1919, establishing the ditch.

In the fall of 1917 a dam was built at the outlet of the lake under the supervision of the county surveyor. The effect was to raise the water in the lake some three and one-half feet above the low stage in 1916, when the ditch proceeding was commenced, at which time the greatest depth of the lake was about three feet. Originally Round lake was of considerable depth, with well defined banks and sandy beaches, and concededly it was at one time a public lake which could not be drained under the statute. About 1904 a freshet partially destroyed its outlet, making a waterfall below, and this gradually worked back and cut into the rim of the lake. The level of the water commenced falling and there was some filling up of the lake with muck, and vegetable growth appeared and the lake became of less use as a public body of water. It is conceded that in 1916 the water was at a very low stage. It does not appear that condemnation proceedings looking toward an assessment of benefits or an award of damages such as are provided by the statute were had. It does not appear that the water was raised by the dam above high-water mark determined by the rule stated in In re Minnetonka L. Imp. 56 Minn. 513, 58 N. W. 295. It does not appear that there was any one entitled to an award of damages. See In re Minnetonka L. Imp. supra; Stenberg v. County of Blue Earth, 112 Minn. 117, 127 N. W. 496. The failure to assess benefits did not invalidate the proceeding and the order of the county board, so far as appears, was valid. State v. District Court of Kandiyohi County, 119 Minn. 132, 137 N. W. 298.

The state owns the beds of navigable lakes below low-water mark in its sovereign capacity in trust for the people, and not in a proprietary capacity. The giving of the beds of dried-up lakes to the riparian owners was originally a matter of favor or grace. State v. Korrer, 127 Minn. 60, 148 N. W. 617, and cases cited. The settled doctrine of this state is that the beds of dried-up lakes belong to the riparian owners. Lamprey v. State, 52 Minn. 181, 53 N. W. 1139, 18 L.R.A. 670, 38 Am. St. 541; Shell v. Matteson, 81 Minn. 38, 83 N. W. 491; State v. Korrer, 127 Minn. 60, 148 N. W. 617, 1095, L.R.A. 1916C, 139, and cases cited.

In a ditch proceeding the state as owner in its sovereign capacity of

lakes proposed to be divided is not a party. In commenting upon this in Erickschen v. County of Sibley, 142 Minn. 37, 170 N. W. 883, Judge Lees said:

"In the clash of conflicting private interests, those of the public are apt to drop out of sight. Yet the state, though not a party to nor represented in the proceedings, has real and substantial rights to protect. The title it holds in its sovereign capacity in trust for the public is directly affected whenever a meandered lake is drained. It should be the concern of the county board and of the courts to guard the rights of the public, and to preserve for the enjoyment of this and future generations all bodies of water which have present or potential public value."

It is not claimed by the petitioners in the ditch proceeding that the lake as raised by the dam, and in the condition in which it was at the final hearing which resulted in the order establishing the ditch, was such a lake as can be drained under the statute relative to the draining of meandered lakes. The claim is that the ditch proceeding, having been commenced in the district court prior to the proceeding before the county board, the board was without jurisdiction to fix the height of the water in the lake, or, stating the contention from a somewhat different viewpoint, that the condition of the lake before its waters were raised by the dam was the one material inquiry.

Whether a meandered lake should be drained, a question of importance to the riparian owners and to the general public, should not depend upon the single fact that a ditch proceeding was instituted a few days prior to the proceeding before the county board. We have not before us an instance of two courts competing for jurisdiction of the same subject matter for the same purpose. The two proceedings are hostile. The ditch proceeding, for a specific public purpose, purposes destroying the lake; the county board, for another public purpose, is looking to its preservation. The legislature gave the county authority to fix lake levels in appropriate cases. There is some element of legislative discretion in the exercise of the power conferred. While the lake was tending toward a condition where it was drainable under the statute, and was becoming of less and less public use, it was in our view a lake

to which the public might still assert a right and a lake of the kind the legislature had in mind when it conferred on county boards authority to maintain levels. The order of the county board was an assertion of right in the public. Effect should be given to the determination of the county board and there is no question of priority of jurisdiction. The fact may be noted, without entering upon an analysis of its effect, that no one had acquired a prescriptive right to have the water in the lake remain at a level lower than that fixed by the county board.

Under the facts before us, it should not be held that the county board was without authority to entertain a proceeding under the statute because so shortly before a ditch proceeding had been begun, nor should it be held, under the facts recited, that the test whether the lake could be drained was its physical condition before the dam was built, irrespective of the order of the county board. The lake was not so far gone that the public had no interest. The order of the county board did not challenge the jurisdiction of the district court. It was presented on October 16, 1916, at the first hearing, before an engineer was appointed, and before proceedings other than those essential to the acquiring of jurisdiction had been taken, and it was again presented when the final hearing was had in the early part of 1919, resulting in the final order of September 8, 1919, establishing the ditch.

We confine our holding to the precise facts before us. Without a suggestion as to what should be the outcome in other situations in a conflict between those interested in the establishment of a ditch and those interested in preserving a meandered lake, which the ditch would drain, we hold that on the facts presented the order of the county board establishing the lake level should have been given effect. Whether without the county board order the ditch was drainable, it is not necessary to decide.

The order of September 8, 1919, so far as it affects Round lake, is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.