## UNITED STATES v. HOLT STATE BANK et al.

(Circuit Court of Appeals, Eighth Circuit. December 5, 1923.)

No. 6223.

**1. Navigable waters 🌐36.(1)—Title to bed of waters governed by state laws.**

The shores and beds of navigable waters were not granted by the Constitution to the United States, but reserved to the states; and, whether waters are navigable or not, title to the soil under the water is determined by the law of the state, subject only to the paramount right of the United States to regulate navigation.

2. **Navigable waters ⟨⟩ 37(7)—Waters and water courses ⟨⟩ 111—Rights of patentee on meandered lake in Minnesota.**

Where a meandered lake in Minnesota is nonnavigable in fact, a patentee of government land bordering on it takes to the middle of the lake, and where the lake is navigable in fact, its waters and bed belong to the state in its sovereign capacity, and the patentee takes the fee only to the water's edge, but with all the rights incident to riparian ownership, including the right to accretions or relictions due to recession of the water.

3. **Navigable waters ⟨⟩ 38—Patentees on meandered lake owned bed after drainage.**

Patentees on a meandered lake in the state of Minnesota or their successors owned the bed of such lake after the water was drained off, whether the lake at the time patents were issued was navigable or nonnavigable.

4. **Navigable waters ⟨⟩ 36(1)—Navigability determined by law of state.**

In the determination of the rights of riparian owners to the lands under the water upon which their lands border, what shall be deemed a navigable water must be determined by the law of the state in which the riparian lands lie.

5. **Navigable waters ⟨⟩ 1(3)—Waters "navigable" in Minnesota when capable of public use.**

Under the law of Minnesota, waters of inland lakes, though not adapted to nor much used for commercial navigation, are "navigable" waters so long as they are capable of being put to public use for sailing, rowing, fishing, fowling, taking water for domestic or agricultural uses, or other like purposes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Navigable.]

6. **Navigable waters ⟨⟩ 36(1)—Restrictions in patent to lands above meander lines ineffective.**

Title to the bed of navigable waters passed to the state where located, and restriction inserted by United States in patents excluding lands below the meander line were ineffective and immaterial, because the United States no longer had any substantial right or interest in the lands under the waters of the lake or below its meander line.

Appeal from the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Suit in equity by the United States against the Holt State Bank and others. Decree for defendants, and plaintiff appeals. Affirmed.

S. W. Williams, Sp. Asst. Atty. Gen., for the United States.

A. N. Eckstrom, of Warren, Minn., and Ole J. Vaule, of Crookston, Minn. (W. E. Rowe, of Crookston, Minn., on the brief), for appellees.

Before SANBORN and LEWIS, Circuit Judges, and McGEE, District Judge.

SANBORN, Circuit Judge. This is a suit in equity by the United States against the homesteaders and their successors in interest, the riparian owners of the lands on the shores of Mud Lake in Minnesota, to quiet its title to the bed of that lake and to perpetually enjoin the defendants from making any farther claim thereto.

There was in the western part of Minnesota in 1889 in townships 156, north of range 42, and 156, north of range 41, west of the Fifth Principal Meridian, a body of water called Mud Lake, which covered an area of about 4,929 acres. The Chippewa Indians were occupy-

ing that part of Minnesota which included this lake and the land surrounding and in the vicinity of it. By the Act of January 14, 1889 (chapter 24, 25 Stat. p. 642), Congress authorized the acquisition of a relinquishment to the United States by those Indians of all their title and interest in and possession of this lake, the land bordering upon it and the lands in its vicinity, and provided that the lands so relinquished should be surveyed by the United States and sold to settlers in accordance with the provisions of its homestead laws for $1.25 per acre, and that the net proceeds of the sales should be placed in the treasury of the United States to the credit of the Chippewa Indians in Minnesota. Pursuant to this act, the Chippewa Indians ceded and relinquished to the United States all their rights and interests in and their possession of this lake, the lands bordering upon it and in the vicinity of it. Those lands were thereupon in 1892 surveyed under the direction of the Commissioner of the General Land Office, and the report, field notes, and plats of the survey were filed in the General Land Office and approved by its Commissioner and the Secretary of the Interior. By this survey this lake was meandered and was designated on the plats as Mud Lake.

On May 15, 1906, the lands so surveyed were by the United States opened for entry under the provisions of the homestead laws and of the act of January 14, 1889. The defendants below in this suit are the purchasers, or the successors in interest of the purchasers, from the United States under this legislation of the lands bordering upon this lake and upon its meander line, and they claim as riparian owners their respective proportionate shares of the land in the bed of this lake, which has in later years become dry. A few of the patents issued by the United States to the lands upon the shores of this lake, that were issued since the year 1915 contain a restriction to this effect:

"It being expressly understood that the conveyance hereby made is limited to the land lying outside of the established meander line of Mud Lake."

After the survey and meander line had been approved and filed in 1892, after the lands bordering on the lake had been opened for entry thereunder by the plaintiff on May 15, 1906, and after many homesteaders had entered lands bordering upon the lake under this legislation, and in the year 1916, the United States caused a survey of the land in the bed of Mud Lake to be made, declared this land opened for entry under its homestead laws, and after the year 1915 permitted homesteaders to the number of about 38 to enter upon it; but it has not yet issued patents therefor.

Between May 15, 1906, when the lands on the shores of Mud Lake were first opened for entry, and 1916, when the lands in the bed of the lake were declared open for entry, and in the years 1910 and 1911, under and in accordance with the laws of the state of Minnesota and pursuant to the orders and decree of the district court of Marshall county in that state, in a case of which that court had jurisdiction, a judicial ditch had been constructed across the land that was the bed of Mud Lake and most of the water upon this bed had been drained off.

In February, 1914, in a suit brought in that court in 1911 by one Albert Johnson, a riparian owner, against the other riparian owners

on Mud Lake to determine their respective rights in the land that was in the bed of that lake, that court adjudged that the riparian owners were the owners of those portions of the bed of the lake which extended to the center thereof between the side lines of their respective tracts extended from the meander line to the center of the lake and established and fixed those lines by its decree.

Upon this state of facts and a large volume of evidence relative to the navigability of Mud Lake, counsel for the United States claimed that that lake never was navigable, that the title to the land in its bed was still in the United States, and that it was entitled to a decree to that effect and to the effect that the riparian owners be enjoined from making any further claims thereto. But the court below upon the final hearing found that Mud Lake was a navigable body of water when the plaintiff sold the lands on its shores to the defendants, or their predecessors in interest, although most of its waters subsequently were drained from it by the judicial ditch and its bed became comparatively dry in 1910 and 1911, that the United States had no title or interest in or to the lands in its bed, and it dismissed the plaintiff's bill. Counsel for the plaintiff has assigned this finding and this decree as error and earnestly contended that Mud Lake never was a navigable body of water, that, consequently, the title to its bed remained the property of the United States, and it was entitled to a decree in its favor.

[1] Reduced to its lowest term, the case presents the single question: Is the United States the owner or are the homesteaders to whom it sold the lands bordering on Mud Lake in 1906 and subsequent years, and their successors in interest, the owners of the land in its bed. The answer to that question, however, is not determined by the answer to the question whether Mud Lake was navigable or unnavigable in 1906, or at any other time.

"The shores of navigable waters and the soils under them were not granted by the Constitution to the United States, but were reserved to the states respectively; and the new states upon their admission to the Union have the same rights in respect thereof as the original states. As to lands bounded on unnavigable waters the United States assumes the position of a private owner subject to the general law of the state so far as its conveyances are concerned. In either case the question whether the title to the soil under the waters passes to the grantee of the shore land is determined by the law of the state where the land lies." Harrison v. Fite, 148 Fed. (8th C. C. A.) 782, 783, 78 C. C. A. 447, 449.

It is determined by the law of the state where the land lies, where the waters are navigable, subject only to the paramount right of the United States to regulate and improve the navigation of those waters for commercial and public purposes. Water Power Co. v. Water Commissioners, 168 U. S. 349, 358, 18 Sup. Ct. 157, 42 L. Ed. 497; Railroad Co. v. Schurmeier, 7 Wall. 272, 19 L. Ed. 74; Shively v. Bowlby, 152 U. S. 1, 38, 40, 57, 58, 14 Sup. Ct. 548, 38 L. Ed. 331; Scott v. Lattig, 227 U. S. 229, 242, 243, 33 Sup. Ct. 242, 57 L. Ed. 490, 44 L. R. A. (N. S.) 107; Port of Seattle v. Ore. & W. R. R., 255 U. S. 56, 63, 41 Sup. Ct. 237, 65 L. Ed. 500; Jackson-Walker Coal & Material Co. v. Hodges (D. C.) 283 Fed. 457, 462.

It is determined by the law of the state where the land lies, where the waters are not navigable. Hardin v. Jordan, 140 U. S. 371, 384,

11 Sup. Ct. 808, 838, 35 L. Ed. 428; United States v. Chandler-Dunbar Co., 229 U. S. 53, 60, 33 Sup. Ct. 667, 57 L. Ed. 1063; Shell v. Matteson, 81 Minn. 38, 40, 41, 83 N. W. 491; Mitchell v. Smale, 140 U. S. 406, 407, 412, 11 Sup. Ct. 819, 35 L. Ed. 442—where the Supreme Court expressed its view of a proceeding like that taken in the case in hand of first selling the shore lands of a lake and subsequently surveying and selling the lands in the bed thereof, in these words:

"We think it a great hardship, and one not to be endured, for the government officers to make new surveys and grants of the beds of such lakes after selling and granting the lands bordering thereon, or represented so to be. It is nothing more nor less than taking from the first grantee a most valuable, and often the most valuable, part of his grant. Plenty of speculators will always be found, as such property increases in value, to enter it and deprive the proper owner of its enjoyment; and to place such persons in possession under a new survey and grant, and put the original grantee of the adjoining property to his action of ejectment and plenary proof of his own title, is a cause of vexatious litigation which ought not to be created or sanctioned."

How then can there be any equity in a bill such as that in hand to sustain and effectuate such a proceeding?

[2] We turn then to the local law of the state of Minnesota to ascertain the rights and interests of homesteaders to whom the United States granted the lands on the shores of Mud Lake in the lands in the bed of that lake. The law of Minnesota upon this subject is not doubtful, and it was clearly stated by the Supreme Court of Minnesota in the year 1893 in these words:

"Where a meandered lake is nonnavigable in fact, the patentee of land bordering on it takes to the middle of the lake; that where the lake is navigable in fact, its waters and bed belong to the state, in its sovereign capacity, and that the riparian patentee takes the fee only to the water's edge, but with all the rights incident to riparian ownership or navigable waters, including the right to accretions or relictions formed or produced in front of his land by the action or recession of the water. Of course, it is a familiar principle that these riparian rights rest upon title to the bank or shore, and not upon title to the soil under the water." Lamprey v. State, 52 Minn. 182, 198, 53 N. W. 1139, 1143 (18 L. R. A. 670, 38 Am. St. Rep. 541); Shell v. Matteson, 81 Minn. 38, 83 N. W. 491.

[3] If, therefore, as the United States insists, Mud Lake was nonnavigable, the defendants below, the riparian owners, took the land in the bed of the lake to the middle of the lake. If, on the other hand, it was navigable, they took the fee to the land on its shores to the water's edge and all the rights and interests incident to the riparian ownership including the accretions and relictions formed or produced in front of their lands by the action or recession of the waters. The land in the bed of this lake consists of such accretions and relictions, and it is the property of the defendants by reason of their ownership of the lands on its shores, subject only to the paramount right of the United States to regulate and improve the navigation of its waters for public and commercial purposes, and that right was never of value and ceased to exist when the bed of the lake became dry land.

[4] Moreover, since the settled law has become that the rights and interests of riparian owners on the shores of lakes and rivers to the lands under the waters upon which they border are determinable by the law of the state in which the lands lie, and since such rights and

interests are often conditioned by the navigability of such waters, it logically follows, and has long since become the law of the land, with some exceptions not material in the consideration of this case (Brewer–Elliott Oil & Gas Co. v. United States [C. C. A.] 270 Fed. 100, 107, 109), that in the determination of the rights of riparian owners to the lands under the water upon which their lands border, what shall be deemed a navigable water must be determined by the law of the state in which the riparian lands lie (Donnelly v. United States, 228 U. S. 243, 262, 33 Sup. Ct. 449, 57 L. Ed. 820, Ann. Cas. 1913E, 710; Jackson-Walker Coal & Material Co. v. Hodges [D. C.] 283 Fed. 457, 462).

[5] The law of the state of Minnesota upon this subject of navigability is, and for more than a quarter of a century has been, that the waters of its inland lakes, though not adapted to nor much used for commercial navigation, are navigable waters so long as they are capable of being put to public use for sailing, rowing, fishing, fowling, taking water for domestic or agricultural uses, or other like purposes, and that when the waters of any of them have so far receded or dried up that they are no longer capable of any beneficial use by the public, their beds become the private property of the riparian owners of the lakes. Lamprey v. State, 52 Minn. 182, 200, 53 N. W. 1139, 18 L. R. A. 670, 38 Am. St. Rep. 541.

[6] The court below tested the navigability of the waters of Mud Lake under the evidence presented to it by this rule and found them to have been navigable waters until the judicial ditch drained them away years after the defendants or their predecessors in interest purchased the land upon their border under the survey of 1892. And a consideration of the evidence leaves no doubt that the waters of this lake were capable of public use and were used by the public for sailing, rowing, fishing, fowling, and other similar purposes until 1910, when the ditch was constructed. There was, therefore, no error of law or mistake of fact in the finding that they were navigable waters according to the law of the state of Minnesota. The title to the land under these waters, therefore, passed from the United States to the state of Minnesota prior to the survey of 1892, and the restrictions inserted by the United States in some of the patents to the lands above the meander line were ineffective and are here immaterial, because the United States no longer had any substantial right or interest in the lands under the waters of the lake or below its meander line.

Our conclusion is that there was no equity in the case of the United States, that it had no substantial right or interest in the lands in the bed of Mud Lake when it commenced this suit, and that the decree of dismissal of its bill ought to be, and it is, affirmed.